| | |
|---|---|
| **HEATHER NELSON,**<br><br>　　　　　**Plaintiff,**<br><br>**v.**<br><br>**SANTANDER CONSUMER USA, INC.,<br>PATRICK K. WILLIS CO., INC., d/b/a/<br>AMERICAN RECOVERY SERVICE, and<br>ASSETSBIZ CORP., d/b/a ABC<br>RECOVERY,**<br><br>　　　　　**Defendants,**<br><br>**SANTANDER CONSUMER USA, INC.,**<br><br>　　　　　**Counter-Plaintiff,**<br><br>**v.**<br><br>**HEATHER NELSON,**<br><br>　　　　　**Counter-Defendant.** | **Case No.:  11-cv-307**<br><br><br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF<br>MOTION TO COMPEL DISCOVERY<br>RESPONSES TO HER FIRST AND<br>SECOND SET OF DISCOVERY<br>REQUESTS** |

## I.  INTRODUCTION AND BACKGROUND

In her Second Amended Complaint, Heather Nelson ("Nelson") made the following allegations, among others:

- In 2005, Nelson purchased two vehicles, a truck and van, for her personal, family and household purposes.  (Second Amended Complaint, ¶ 14.)

- To finance the purchases of the truck and van, Nelson obtained two loans from the auto dealership from which  she purchased the vehicles. (Second Amended Complaint, ¶ 15.)

- In 2007, HSBC Auto Finance, Inc., an automobile finance company, and Nelson, entered into two agreements—one for the truck ("Truck Loan") and one for the van ("Van Loan")—to refinance the two loans for Nelson. (Second Amended Complaint, ¶ 16.)

- In March 2010, HSBC sold and assigned the Van Loan to Santander Consumer USA, Inc. ("Santander") a financial lender engaged in, among other business activities, offering loans to consumers for the purchase and refinance of loans related to automobiles, buying such loans from other lenders, and debt collection. (Second Amended Complaint, ¶¶ 19-20.)

- At the time HSBC sold and assigned the Van Loan to Santander, the loan was in default as that term was defined in the loan agreement between HSBC and Nelson. (Second Amended Complaint, ¶ 20.)

- In March 2010, HSBC either sold and assigned the Truck Loan to Santander or, alternatively, entered into an agreement with Santander whereby HSBC would continue to own the Truck Loan but Santander would serve as a third-party servicer for HSBC on the Truck Loan. (Second Amended Complaint, ¶ 21.)

- At the time HSBC either assigned the Truck Loan to Santander or, alternatively, entered into an agreement with Santander whereby HSBC would continue to own the truck but Santander would serve as a third-party servicer for HSBC on the Truck Loan, the Truck Loan was, upon information and belief, in "default" as that term is defined in the loan agreement between HSBC and Nelson. (Second Amended Complaint, ¶ 22.)

- In March 2010, Santander began debt collection communications with Nelson on the Truck Loan and Van Loan in order to try and collect money related to the two loans. (Second Amended Complaint, ¶ 23.)

- Santander willfully and knowingly made hundreds of telephone calls to Nelson's cellular telephone using an "automatic telephone dialing system," as that term is defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1). (Second Amended Complaint, ¶ 24.)

- Nelson never gave Santander her express consent to call her cellular telephone. (Second Amended Complaint, ¶ 25.)

- Nelson informed Santander orally and in writing not to call her cellular telephone. (Second Amended Complaint, ¶ 26.)

- Santander made repeated debt collection calls to Nelson many times, making multiple calls in an hour and frequently making multiple calls in one day. (Second Amended Complaint, ¶ 27.)

- Santander made repeated calls to Nelson's employers without Nelson's permission, and after Nelson told Santander not to call her at her place of employment. (Second Amended Complaint, ¶ 28.)

- Santander intentionally made the frequent and repeated calls to Nelson for the purpose of causing her anxiety, frustration and fear. (Second Amended Complaint, ¶ 29.)

- As part of its' debt collection campaign, Santander contacted multiple third parties, including, but not limited to, Nelson's mother, Cindy Olson, her father, Warren Olson, her stepmother, Kathy Olson, and Nelson's friend, Nicole Badgley, in an attempt to collect the alleged debts, all without Nelson's consent. (Second Amended Complaint, ¶ 30.)

- Santander, through its employees and/or agents, threatened Nelson by telling her that she could "go to jail" if she failed to pay the alleged debts. (Second Amended Complaint, ¶ 31.)

- Santander, through its employees and/or agents, intimidated Nelson by telling her that the caller was with the Department of Justice. (Second Amended Complaint,¶ 32.)

- Nelson was scared and intimidated by Santander's and its employees' and agents' conduct and suffered embarrassment, humiliation, anxiety, frustration, and fear. (Second Amended Complaint, ¶ 33.)

- Santander trained its employees and agents to engage in the types of debt collection conduct that Santander engaged in with Nelson. (Second Amended Complaint, ¶ 34.)

- Santander has a policy of engaging in frequent, repeated, and uninvited calls to debtors, debtors' friends, debtors' neighbors, debtors' family members, and debtors' employers in order to try and collect money. (Second Amended Complaint, ¶ 35.)

- Santander engaged in the same conduct it engaged in towards Nelson with other consumers and customers, and that it is Santander's practice to engage in frequent, repeated, and uninvited calls to debtors, debtors' friends, debtors' neighbors, debtors' family members, and debtors' employers in order to try and collect money. (Second Amended Complaint, ¶ 36.)

- On or about late May 2010, Santander retained Patrick K. Willis Co., Inc., doing business as American Recovery Service ("ARS"), to attempt repossession of Nelson's van and truck. ARS, in turn, retained AssetsBiz Corp. ("AssetsBiz") as its local repossession agent. (Second Amended Complaint, ¶ 37.)

- In May of 2010 Defendants repossessed Nelson's truck. (Second Amended Complaint, ¶ 38.)

- In repossessing her truck, Defendants' breached the peace by taking the truck after Nelson had told them to refrain from taking the truck. (Second Amended Complaint, ¶ 39.)

- Defendants failed to send Nelson a proper notice of right to cure default required by Wis. Stat. § 425.104 and 425.105 before repossessing Nelson's truck in May of

2010.  (Second Amended Complaint, ¶ 40.)

- Defendants failed to sent Nelson a proper notice containing all the information required by Wis. Stat. § 425.205 before repossessing Nelson's truck in May of 2010.  (Second Amended Complaint, ¶ 41.)

- Defendants attempted to repossess Nelson's van in November 2010.  (Second Amended Complaint, ¶ 42.)

- Defendants' breached the peace in attempting to repossess Nelson's van by attempting to take the van after Nelson had told them to refrain from taking the van.  (Second Amended Complaint, ¶ 43.)

- Prior to attempting to repossess her van, Defendants threatened Nelson by telling her that "the hunt is on," and they were looking for her van, and would take it when they found it.  (Second Amended Complaint, ¶ 44.)

- Defendants failed to send Nelson a proper notice of right to cure default required by Wis. Stat. § 425.104 and 425.105 before attempting to repossess Nelson's van in November of 2010.  (Second Amended Complaint, ¶ 45.)

- Defendants failed to sent Nelson a proper notice containing all the information required by Wis. Stat. § 425.205 before attempting to repossess Nelson's van in November of 2010.  (Second Amended Complaint, ¶ 46.)

In her Second Amended Complaint, Nelson brought the following claims against Santander: 1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, for, among other things, engaging in debt collection harassment and abuse; 2) violation of the Wisconsin Consumer Act, Chapter 427, for, among other things, engaging in debt collection harassment and abuse and attempting or threatening to enforce a right with knowledge or reason to know that the right does not exist; 3) violation of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227, for willfully and knowingly calling Nelson on her cellular telephone using an auto dialer without her express consent; 4) violation of the Wisconsin Consumer Act, Chapter 425, for failing to send Nelson a proper notice of right to cure default before repossessing her vehicle and breaching the peace during the repossession; 5) violation of the Wisconsin Consumer Act, Chapter 425, for unauthorized terms included in the two loan agreements between HSBC and Nelson; 6) invasion of privacy, for unreasonably invading Nelson's right of privacy; 7) private

nuisance, for invading Nelson's private use and enjoyment of her home; and 8) civil theft, for intentionally taking and carrying away Nelson's vehicle without her consent and with the intent to deprive her permanently of possession of the vehicle. (Second Amended Complaint, ¶¶ 59-103.)

Santander, in turn, brought counterclaims for breach of contract and breach of security agreement/replevin for the Van Loan and Truck Loan. (Santander Consumer USA, Inc.'s Counterclaim, ¶¶ 1-38.)

## II. MOTION FOR SANCTIONS BASED UPON SANTANDER'S FAILURE TO PROVIDE TIMELY OR ADEQUATE DISCOVERY RESPONSES TO NELSON'S DISCOVERY REQUESTS

During the pendency of this action, Nelson has propounded two sets of discovery to Santander related to her claims, Santander's counterclaims, and Santander's affirmative defenses. (October 3, 2012 Affidavit of Mary Catherine Fons, ¶¶ 5, 7.) To date, Santander has either flat-out refused to provide information requested by Nelson in her discovery requests, or stated that it would provide the information requested but failed to do so. Nelson's counsel has made multiple good-faith attempts to obtain the discovery responses directly with Santander's counsel before bringing this motion, which attempts are set forth in detail in the Affidavit of Mary Catherine Fons filed in support of this Motion. (October 3, 2012 Affidavit of Mary Catherine Fons, ¶¶ 3-17.)

Nelson now moves the Court for an order compelling Santander to produce responses to Nelson's discovery requests, as identified in more detail below, as well as an order requiring Santander to pay Nelson her reasonable expenses, including attorney's fees, for bringing this Motion pursuant to FRCiv.P 37.

## A. THE SCOPE OF DISCOVERY IN FEDERAL RULE OF CIVIL PROCEDURE 26 ENCOMPASSES ALL OF NELSON'S DISCOVERY REQUESTS

Federal Rule of Civil Procedure 26(b)(1) provides a broad scope for discovery:

Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

In general, discovery is allowed of any matter that is relevant to the claim or defense of any party in the pending action and is not privileged. WWP, Inc. v. Wounded Warriors Family Support, Inc., 628 F. 3d 1032, 1039 (8th Cir. 2011); Watts v. S.E.C., 482 F.3d 501, 507 (D.C. Cir. 2007). Courts permit discovery if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. See, e.g., Sheldon v. Vermonty, 204 F.R.D. 679, 689-90 (D.Kan. 2001).

"Admissibility at trial is not the yardstick of permissible discovery." Chubb Integrated Sys. v. National Bank, 103 F.R.D. 52, 59 (D.D.C. 1984). Moreover, the objecting party bears the burden of showing why discovery should be denied. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975). The mere statement by a party that discovery is "irrelevant and immaterial" is not enough to discharge this burden. Joseph v. Harris Corp., 677 F.2d 985, 992 (3rd Cir. 1982).

## B. NELSON'S DISCOVERY REQUESTS AND SANTANDER'S RESPONSES

## I. FIRST SET OF INTERROGATORIES TO SANTANDER

**INTERROGATORY NO. 3:** Provide the complete factual basis for your affirmative defense that any violations of the Fair Debt Collection Practices Act were the result of bona fide

error, including but not limited to, a description of the procedures maintained by Santander that were reasonably calculated to avoid such an error.

**RESPONSE TO INTERROGATORY NO. 3:** FIA (sic) objects to this request as duplicative, unduly burdensome, and to the extent it seeks information that is better obtained through other discovery methods, in particular document requests.

**ARGUMENT FOR INTERROGATORY NO. 3:** In its answer to Nelson's first amended complaint, Santander raised 9 affirmative defenses, one of which was that any act or omission by Santander, if determined to be in violation of the FDCPA, was not intentional, and was the result of bona fide error notwithstanding the maintenance of procedures reasonably calculated to avoid such an error. (Santander Consumer USA, Inc.'s Answer to Amended Complaint, Affirmative Defense #2.) Santander, however, failed to raise any affirmative defenses in its answer to Nelson's second amended complaint. It is, therefore, unclear as to whether Santander is maintaining its bona fide error defense.

If Santander is maintaining its bona fide error defense, Nelson is entitled to know the factual basis or bases behind its defense, so she can challenge Santander's contention that any violation of the FDCPA was not intentional and was the result of a bona fide error. If Santander is not maintaining its bona fide error defense, then Nelson will withdraw this interrogatory.[1]

## II. FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO SANTANDER

**DOCUMENT REQUEST NO. 2:** All phone records connected with any attempts to collect a debt from Nelson.

**RESPONSE TO DOCUMENT REQUEST NO. 2:** Santander Consumer objects to this request as overbroad and unduly burdensome. Subject to these objections, Santander Consumer states that it will produce all non-privileged documents relating to its attempts to collect a debt from Heather Nelson.

**ARGUMENT FOR DOCUMENT REQUEST NO. 2:** Santander has produced its notes ("Account Notes" or "call log"), attached as Exhibit A under seal, of calls made connected to Nelson and others related to Nelson's loans. Santander's call log purports to show all the telephone calls Santander made to Nelson and others related to Nelson's loans. The call log, however, was, upon information and belief, created by Santander, and, therefore, may not contain all of the calls Santander made to Nelson and others related to Nelson's loans and may not be accurate. The only way Nelson can verify if Santander's call log contains all of the calls made by Santander is by comparing it to Santander's phone records. There are two categories of phone records Nelson is seeking: 1) those created by its telephone service providers; and 2) Santander's internal computer software records that reflect all calls made through Santander's telephone system. Nelson, therefore, asks the Court to order Santander to produce phone records from its own telephone system and its service providers' records it has related to its' attempts to collect a

---

1 Nelson's counsel asked Santander's counsel whether Santander is maintaining any of its affirmative defenses. Santander's counsel stated that Santander intends on raising affirmative defenses, but has failed to do so to date. (October 3, 2012 Affidavit of Mary Catherine Fons, ¶ 18.)

debt from Nelson.

**DOCUMENT REQUEST NO. 11:** Santander's most recent set of annual financial statements.

**RESPONSE TO DOCUMENT REQUEST NO. 11:** Santander Consumer objects to this request as overbroad and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR DOCUMENT REQUEST NO. 11:** Nelson is seeking punitive damages from Santander. She alleges that Santander intentionally disregarded her rights. Wis. Stat. § 895.043(3) specifically allows for punitive damages under these circumstances. A plaintiff seeking discovery of financial information in support of a punitive damages claim should be afforded an adequate opportunity to examine those materials prior to trial. State ex rel. Kubatzky v. Holt, 483 S.W. 3d 799, 805 (Mo. App. 1972). If the Court allows Nelson to pursue punitive damages from the jury, she must then introduce financial evidence at trial to support her claims for punitive damages. Wis. Stat. § 895.043(4). Nelson also incorporates her Argument for Document Request No. 13, immediately below, which addresses proof needed to support a claim for punitive damages.

**DOCUMENT REQUEST NO. 13:** All documents relating to any complaints filed with the Federal Trade Commission, Wisconsin Department of Financial Institutions, or any other state or federal regulatory authority relating to Santander.

**RESPONSE TO DOCUMENT REQUEST NO. 13:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR DOCUMENT REQUEST NO. 13:** First, Nelson is entitled to conduct a general investigation into Santander's business practices to determine if the conduct Nelson complains of is part of Santander's usual and customary business practices. Complaints filed with state and federal agencies may provide relevant information regarding Santander's business practices.

Second, Nelson, as noted above, is seeking an award of punitive damages. Under BMW of North America v. Gore, 517 U.S. 559, 134 L. Ed. 2d 809, 116 S. Ct. 1589 (1996); Pulla v. Amoco Oil Company, 72 F.3d 648, 659 – 66 (8th Cir 1995); and TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 125 L. Ed. 2d 366, 113 S. Ct. 2711(1993), the plaintiff has not only a right, but a duty, to produce evidence of any similar misconduct by the defendant. See Pulla, at 660: "We emphasize that, because Pulla failed to present any evidence that Amoco put any other individual's privacy at risk (e.g., Pulla did not suggest that the search of his credit card records stemmed from a company policy), the potential harm from the search of his credit cards can only be analyzed as the search affected him."

Courts have stated in "proving an unfair business practice violation, claimants are entitled to introduce evidence not only of practices which affect them individually, but also similar practices involving other members of the public who are not parties to the action." Cisneros v. The U.D. Registry, Inc., 39 Cal. App. 4th, 548, 46 Cal. Rptr. 2d 233 (1995). Additionally, courts have permitted plaintiffs to pursue discovery into a defendant's dealing with others. Colonial Life & Accident Ins. v. Superior Court of Los Angeles County, 31 Cal.3d, 785, 183 Cal. Rptr. 810 (1982). The Colonial court, for example, found that discovery in "unfair claim settlement

practices" cases can extend to how a defendant handled the claims of other insureds. On this, the court stated:

> Other instances of alleged unfair settlement practices may also be highly relevant to plaintiff's claim for punitive damages. Punitive damages must be based on a showing of "oppression, fraud, or malice." "To be liable for punitive damages, defendant must act with the intent to vex, injure, or annoy, *or with a conscious disregard of the plaintiff's rights*." (2) These elements may be proven directly or by implication. (3) Indirect evidence of the elements of punitive damages may be suggested by a pattern of unfair practices. In Neal, supra, for example, we affirmed an award of punitive damages based on a failure to settle where the evidence indicated that defendant insurance company's refusal "to accept [plaintiff's] offer of settlement, and its subsequent submission of the matter to its attorney for opinion, were all part of a conscious course of conduct, firmly grounded in established company policy...." Similarly, in Delos v. Farmers Insurance Group, hearing denied August 29, 1979, the court upheld an award of punitive damages based in part on "an inextricable involvement with conduct aptly described ... as a `nefarious scheme to mislead and defraud thousands of policyholders' with defendants' decision to deny [plaintiff's] claim."

Id. at 792 (internal citations omitted).

Copies of complaints, judgments, court opinions and consent orders are discoverable because the information may lead to the discovery of admissible evidence concerning the defendants' practices. Trevino v. ACB Am., Inc., 232 F.R.D. 612 (N.D. Cal 2006); Boutvis v. Risk Mgmt. Alternatives, Inc., 2002 U.S. Dist. LEXIS 8521 (D. Conn. May 3, 2002); Kimbro v. I.C. Sys., Inc 2002 WL 1816820 (D. Conn. July 22, 2002); Yancey v. Hooten, 180 F.R.D. 203 (D. Conn. 1998). In Boutvis v. Risk Management Alternatives, 2002 U.S. Dist. LEXIS 8521 (D. Conn, 2002), the court ordered the defendant to produce documents of past judgments, court opinions, complaints, and consent orders concerning defendant's practices, stating that:

> Plaintiff's request is reasonably limited as to scope and time. The material sought is clearly relevant to the state of mind with which defendant acted. It is also relevant to whether defendant's alleged statutory violations occurred after it had actual notice that its practices were actionable. While it may be burden some to require defendant to compile and permit discovery of the various legal complaints and judgments against it from 2001 to the present, surely these documents are not so voluminous that it is an unreasonable or unfair burden for defendant to shoulder.

Id. at 10.

Complaints filed with state agencies and institutions may show that Santander has engaged in other instances of like conduct with other consumers. This, in turn, would show that Santander intentionally trains, encourages, or condones its employees to engage in the sort of behavior Nelson complains of, or that it intentionally turns a blind eye to employees who engage in this sort of behavior, and would support Nelson's claim for compensatory and punitive damages.


## III.  SECOND SET OF INTERROGATORIES TO SANTANDER

**INTERROGATORY NO. 6**:  Identify all persons known to Santander to have personal knowledge of any facts or issues involved in this lawsuit, and state the following for each individual identified:

a. The individual's full legal name;
b. All DBAs, fake, or alias name(s) used by the individual;
c. The individual's job title or capacity;
d. The individual's business address and telephone number;
e. The individual's home address and telephone number;
f. The individual's age; and
g. The individual's dates of employment with Santander.

**RESPONSE TO INTERROGATORY NO. 6:** Santander Consumer objects to this document request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine. Subject to these objections, Santander Consumer states that, in addition to the persons identified in Plaintiff's Initial Disclosures and its prior discovery responses, in particular the account notes produced at SCUSA 000001 – 000096 (the "Account Notes").

**ARGUMENT FOR INTERROGATORY NO. 6: 1. Debt Collectors.** As a supplement to its above response, Santander produced a document that identifies only the names of the more than 250 individuals who, it claims, have contacted or attempted to contact Nelson or others related to Nelson's loans. Santander still refuses, however, to identify all of the individuals' job titles or capacities, aliases, their business addresses and telephone numbers, their home addresses and telephone numbers, their age, or their dates of employment with Santander. Each of these individuals should have been specifically identified in Santander's 26(a)(1) disclosures (by name, telephone number, address, etc.) as opposed to being identified as a category of employee in Santander's disclosures ("Any employees or representatives of Santander who communicated with Plaintiff."). Many of these individuals are likely to have discoverable information. The Federal Rules of Civil procedure specifically allow for discovery of "the identity and location of persons who know of any discoverable matter". FRCiv.P 26(b)(1).

Santander's counsel has produced some information on 9 of the individuals, but claims that Nelson's counsel must go through Santander's counsel to obtain information on any other specific individuals. In other words, Santander wants to be the gatekeeper as to whom Nelson's counsel may contact. This includes current and former employees.

Nelson would like to contact some of these individuals—either formally or informally— to determine what information they may have regarding this case—but Santander's refusal to provide the requested information is stifling Nelson's counsel.

Santander should easily be able to produce a simple list identifying the individuals along with the other information requested. Santander should not be heard to complain about any burden compiling this list may create. It made the business decision to have all of these individuals contact, or attempt to contact, Nelson and others related to Nelson's loans, and should, therefore, have to produce information related to those individuals. Santander, in effect, cries there is too much to produce, when it caused the problem in the first instance.

Santander's counsel claims that current employees should be contacted through Santander's counsel. Santander has also failed to provide contact information of former employees. Wisconsin lawyers, however, are ethically permitted to directly contact former employees of organizations, unless those employees have entered an attorney-client relationship. On this, Ethics Opinion E-07-01 states, in relevant part, that: "Consent of the organization's lawyer is not required for contact with a former constituent of the organization, regardless of the constituent's former position." As put by the court in holding that Rule 4.2 does not prohibit contact with former employees of a corporation:

Indeed, exclusion of former employees furthers both the specific and the more general purposes of rule 4.2. It must be remembered that rule 4.2 is but one part of a comprehensive system of laws and regulations designed to hold counsel to the highest professional standards in our adversary system. Within that system, pretrial (including precomplaint) discovery plays an essential role. It is the phase in which material facts are discovered, issues are narrowed as theories of the case are tested, rejected, or refined, and the parties and their attorneys have the opportunity to assess the strengths and weaknesses of their case with an eye toward both trial and the negotiation of settlement. Courts have long recognized that informal interviews are an exceptionally efficient means for the meaningful gathering of facts. They are generally more conducive to full disclosure and far less costly than the more structured processes of formal discovery, or even informal investigation with opposing counsel present. See Niesig v. Team I, 76 N.Y.2d 363, 372, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990) ("Costly formal depositions that may deter litigants with limited resources, or even somewhat less formal and costly interviews attended by adversary counsel, are no substitute for such off-the-record private efforts to learn and assemble, rather than perpetuate, information")…

Former employees may be a useful source of meaningful information, because they may feel less directly tied to the employer's interests and therefore more willing to discuss informally what they know. At the same time, these employees may still have economic and other ties to the organization that would make them reluctant to speak freely in the presence of the organization's attorneys, even in an informal setting. In effect, immunizing former employees from all ex parte interviews would permit the organization to monitor the flow of nonprivileged information to a potential adversary at the expense of uncovering material facts. Fairness in our established system of adversary representation would be the casualty.

Clark v. Beverly Health and Rehabilitation Services, Inc., 440 Mass. 270, 277, 797 N.E.2d 905 (2003) (cited by Ethics Opinion E-07-01, Effective date: July 1, 2007).

Santander's counsel has stated that all of the information the individuals have (all 250+ of them) is contained in the Account Notes or call log. (Attached as Exhibit A) But it is unclear what steps Santander took to verify this. Did, for example, Santander ask each of those individuals what they knew regarding the claims in this case? If not, then it is unclear how Santander could make this claim. Santander should be ordered to produce this information.

**2. Managers and Officers and Others.** Santander also failed to identify any of its managers or officers that may have knowledge of facts or issues in this case. It only produced the names of individuals who called or attempted to call Nelson or others related to Nelson's loans. Santander also failed to identify any individuals who may have knowledge of its claims or defenses. In its 26(a)(1)'s it identified Santander's corporate representative "who will have knowledge of the loans made to Plaintiff, the contacts and communications with Plaintiff, and any actions or investigations taken as a result of any communications with Plaintiff," but failed to identify any specific individual or individuals. It also identified "Santander's custodian of records," but failed to identify that individual.

**3. Individuals Knowledgeable about Internal Operations.** Santander has also failed to identify any individuals who have knowledge of its training procedures, debt collection policies and practices, and computer and telephone systems. All of these individuals would have personal knowledge of the facts and issues involved in this lawsuit and should have been

identified.

**INTERROGATORY NO. 7:** Identify and describe with particularity all training related to the collection of debts that Santander provided its employees and agents in the last 5 years, including but not limited to:

      a. The training content, timing, and duration;
      b. All documents and audio or visual materials used in such training; and
      c. Each person involved in providing such training.

**RESPONSE TO INTERROGATORY NO. 7:** Santander Consumer objects to this interrogatory as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR INTERROGATORY NO. 7:** Santander's training of its employees related to the collection of debts is relevant to Nelson's claims for violation of debt collection harassment laws, such as the WCA and FDCPA. If Nelson can show that Santander does little or no training regarding debt collection, or that Santander trains its employees to use illegal debt collection techniques, she will be able to defeat Santander's affirmative defense regarding bona fide error (if it still maintains this defense) and help prove her claim for compensatory and punitive damages. This information is also relevant to help Nelson prove that her version of events is more credible than Santander's. This is a factor that Nelson needs to examine to investigate the systemic nature of Santander's debt collection conduct, an important factor for her claims for punitive damages.

Nelson's counsel agreed to limit the timeframe for this interrogatory from the beginning of 2009 to the present. Santander indicated its willingness to supplement its response based on this limitation. To date, however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**INTERROGATORY NO. 10:** Identify the factual basis or bases for all of Santander's affirmative defenses, Santander's denials to the allegations in Plaintiff's Amended Complaint, and Santander's denials to Plaintiff's requests for admission, including the requests for admission set forth in this document.

**RESPONSE TO INTERROGATORY NO. 10:** Santander Consumer objects to this request as duplicative, unduly burdensome, and is seeking information that is better obtained through other litigation and discovery methods.

**ARGUMENT FOR INTERROGATORY NO. 10:** First, Santander claims that it can choose Nelson's method of discovery by claiming that the information she seeks in this interrogatory is better obtained through other litigation and discovery methods. Santander failed, however, to identify the authority that permits it to make such a claim. Santander also fails to offer the information Nelson seeks through any other discovery method.

Second, the focus of this request is self-evident. It goes to the factual basis or bases for all of Santander's affirmative defenses (if still extant), its denials to Nelson's allegations, and its denials to Nelson's requests for admission. It is patent that Nelson is entitled to this information, as it seeks only factual information. Santander did not claim that the interrogatory called for a legal conclusion. Even if it had, however, the interrogatory would still be proper. "An interrogatory which inquires into the facts upon which certain vague and general allegations of a

complaint are founded…is not objectionable on the ground that it calls for a legal conclusion." Sargent-Welch Scientific Co. v. Ventron Corp., 59 F.R.D. 500 (N.D. Ill. 1973); *see also* Harlem River Const. Co. v. Associated Gas of Harlem, Inc., 64 F.R.D. 459 (S.D. N.Y. 1974); Jones v. Goldstein, 41 F.R.D. 271, 273 (D. Md. 1966).

**INTERROGATORY NO. 13:** In the form of a chronology, identify and describe in detail and with particularity, the process, events, and circumstances under which the debts allegedly owed by Plaintiff was referred, placed, sold or otherwise assigned to Santander for collection, identifying all documents relevant to, related to, or reflecting such referral, placement, sale or assignment.

**RESPONSE TO INTERROGATORY NO. 13:** Santander Consumer objects to this interrogatory as overbroad, unduly burdensome, seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information, and as seeking information that is better obtained through other discovery methods. Subject to those objections, Santander Consumer states that this interrogatory misstates the facts related to Plaintiff's accounts as they were not referred, placed, sold, or otherwise assigned to Santander for collection, but rather for all servicing purposes as part of an agreement between HSBC and Santander Consumer under which Santander Consumer assumed servicing responsibilities for HSBC's accounts as of March 15, 2010. Santander Consumer further states that by August 27, 2010, Santander Consumer had purchased all HSBC accounts that it was servicing.

**ARGUMENT FOR INTERROGATORY NO. 13:** Santander failed to identify the servicing agreement(s) and purchase agreement(s) it referenced in its response. It also failed to provide a chronology which includes the circumstances under which Nelson's two loans were referred, placed, sold or otherwise assigned to Santander, and failed to identify the dates Nelson's two loans were placed with Santander for servicing (i.e., referred or placed with Santander) or sold (i.e., assigned to Santander) to Santander. The two dates Santander identifies seem to apply to a broad array of accounts HSBC sold to Santander, which may or may not include Nelson's two loans.

This information is important because Santander produced two documents—one purporting to be a "Bill of Sale" between HSBC Auto Finance, Inc., and Santander, and one purporting to be a "Bill of Sale" between HSBC Auto Credit, Inc., HSBC Auto Accounts, Inc,. and 28 other affiliated sellers, and Santander—that, according to Santander, demonstrate that Nelson's two loans were somehow sold to Santander. The two Bills of Sale both refer to a Purchase Agreement—one dated August 27, 2010, and one dated November 9, 2009—that were not produced, however. The documents do not identify any of the particular assets sold to Santander and do not identify Nelson or her two loans. It is unclear why Santander produced two Bills of Sale, and which of the Bills of Sale, if either one of them, applies to Nelson's two loans.

Nelson also needs this information to challenge Santander's counterclaims (if Santander was not assigned Nelson's loans, for instance, it had no standing to bring claims against her) and to prosecute her claims (Santander would violate the WCA and FDCPA, for example, if it did not have legal standing to bring its claims).

More than 90 days after receiving this interrogatory, Santander indicated its' willingness to supplement this response. To date however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**INTERROGATORY NO. 15:** Identify and describe each communication, or attempted communication, between Santander and the Plaintiff, and Santander and any other person or entity, which was made in connection with the collection of Plaintiff's debt, by stating the following:

      a.  The name of the individual initiating communication;
      b.  The name of the person and/or description of the person to whom the communication was directed;
      c.  The date and time of the communication;
      d.  The method of the communication (e.g. letter, phone call, in-person);
      e.  A detailed description of the substance of the communication, (do not simply refer to collection notes);
      f.  Identification of all witnesses to or participants in the communication; and,
      g.  Any actions taken by Santander as a result of the communication.

**RESPONSE TO INTERROGATORY NO. 15:** Santander Consumer objects to this interrogatory as overbroad and unduly burdensome. Subject to these objections, Santander Consumer states that all communications or attempted communications Santander Consumer made related to Plaintiff's accounts are identified in documents produced by Santander Consumer, in particular the Account Notes.

**ARGUMENT FOR INTERROGATORY NO. 15:** Santander did not provide a response to 15e, 15f, and 15g. Santander, as noted above, produced a call log (referred to as the "Account Notes"), attached as Exhibit A, which purports to contain a list of all calls to Nelson and others related to Nelson or her loans. It failed to identify any witnesses to or participants in the communication—other than the identified callers—or any actions taken by Santander as a result of the communication, however. Even for the callers it identified, Santander failed, as noted in Argument for Interrogatory No. 6 (p. 10 above), to provide their contact information. Nelson is entitled to this information because it pertains directly to many of her claims. If, for example, Santander was on notice that Nelson told Santander employees to stop calling her and that Nelson sent a letter to Santander stating the same thing, as she contends, and Santander was aware of this, it is highly relevant what actions, if any, Santander took to honor her demand.

**INTERROGATORY NO. 17:** Identify the business name, address, and telephone number of all persons, companies, corporations, or other entities who provided local or long distance telephone services of any kind to Santander, as well as identifying all telephone numbers and account numbers for each such local and long distance service provider, for a period of SIX (6) YEARS before the date of this request to the present.

**RESPONSE TO INTERROGATORY NO. 17:** Santander Consumer objects to this interrogatory as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR INTERROGATORY NO. 17:** This interrogatory is directed at finding information relevant to Nelson's FDCPA, WCA and TCPA claims. Nelson intends to subpoena documents from Santander's telephone service providers to show the calls Santander made to Nelson and others. Nelson needs to know what service providers to contact in order to obtain those records. If, for example, the service providers' records show calls made to Nelson by Santander that Santander's call log do not reflect, it would demonstrate that Santander does

not keep accurate call records. Nelson is entitled to obtain neutral third party records to determine if the records created by Santander are accurate.

**INTERROGATORY NO. 18:** Identify every single local or long distance telephone number used by Santander in the course of its business/businesses or otherwise which is used, accessible, or made available at any time, to any employee, as well as identifying account numbers for each such local and long distance service provider, for a period of SIX (6) YEARS before the date of this request to the present.

**RESPONSE TO NTERROGATORY NO. 18:** Santander Consumer objects to this interrogatory as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR INTERROGATORY NO. 18:** This interrogatory is directed at finding information relevant to Nelson's FDCPA, WCA and TCPA claims. Nelson intends to subpoena documents from Santander's telephone service providers to show the calls Santander made to Nelson and others. Nelson needs the phone numbers so it can subpoena documents related to those numbers. If, for example, the service providers' records show calls made to Nelson by Santander that Santander's call log do not reflect, it would demonstrate that Santander does not keep accurate call records. Nelson is entitled to obtain neutral third party records to determine if the records created by Santander are accurate.

**INTERROGATORY NO. 19:** Identify the name, telephone extension numbers, collector number, long distance access codes, long distance calling card brands and numbers, and personal and/or business cellular phone numbers of Santander, or any person whom is or was employed by Santander, to collect the alleged debt of the Plaintiff in this case, for a period of SIX (6) YEARS before the date of this request to the present.

**RESPONSE TO INTERROGATORY NO. 19:** Santander Consumer objects to this interrogatory as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR INTERROGATORY NO. 19:** This interrogatory is directed at finding information to interpret and analyze Santander's phone calls it made to Nelson and others related to her loans. Nelson needs to determine who was making the calls and where the calls originated. All of the requested information will help in this analysis.

**INTERROGATORY NO. 20:** Identify the business name, address, and telephone number of all persons, companies, corporations, or other entities who provided predictive dialing, auto-dialing, robotic-dialing, automated-messaging, text-messaging, emailing, or similar services of any kind to Santander, as well as identifying the telephone numbers and account numbers for each such service provider, for a period of SIX (6) YEARS before the date of this request to the present.

**RESPONSE TO INTERROGATORY NO. 20:** Santander Consumer objects to this interrogatory as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR INTERROGATORY NO. 20:** This interrogatory goes directly to Nelson's TCPA claims. Santander claims that it did not use an auto dialer to contact Nelson, even though its collection notes seem to contradict its assertion. Nelson will have to take a deposition of any company that provided auto-dialing, predictive dialing, or robotic dialing to Santander in order to investigate the technology Santander uses to make debt collection calls and to prove Santander violated the TCPA.

More than 90 days after receiving this interrogatory, Santander indicated its willingness to supplement its response. To date, however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**INTERROGATORY NO. 21:** Identify all documents, reports, spreadsheets, or other data of any kind summarizing, detailing, or tracking the telephone number, quantity, frequency, date, time and/or instance of any attempt by Santander to contact Plaintiff by telephone or otherwise, along with the physical location, identity and telephone number of the custodian of such records, regardless of whether or not such attempted or successful contact was initiated by Santander or other service providers.

**RESPONSE TO INTERROGATORY NO. 21:** Santander Consumer objects to this interrogatory as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR INTERROGATORY NO. 21:** This interrogatory is directed at finding information relevant to Nelson's FDCPA, WCA and TCPA claims. This is information available on Santander's computer systems and software programs by which Santander can track and summarize all calls made regarding Nelson's accounts.

More than 90 days after receiving this interrogatory, Santander indicated its willingness to supplement its response. To date, however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**INTERROGATORY NO. 22:** Identify the business name, address, and telephone number of all persons, companies, corporations, or other entities who provided skip-tracing, location, or similar services of any kind to Santander, as well as identifying the telephone numbers and account numbers for each such service provider, for a period of SIX (6) YEARS before the date of this request to the present.

**RESPONSE TO INTERROGATORY NO. 22:** Santander Consumer objects to this interrogatory as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR INTERROGATORY NO. 22:** Skip tracing is the process of locating a person's whereabouts. This interrogatory goes to Nelson's FDCPA, WCA and TCPA claims. Nelson contends that she informed Santander in writing and orally to stop calling her cellular telephone. She also changed telephone numbers. Nelson needs to determine how Santander found her cellular telephone number to help prove that Santander did not have permission to call her cellular telephone. Nelson also needs to determine how Santander located the contact information for third parties that it contacted in attempting to collect money from Nelson, such as her employers, relatives, etc.

**INTERROGATORY NO. 23:** Identify the full legal name, address, telephone number,

position, and title of all Santander employees (current or former) who were engaged in debt collection, and were located at any Santander facility that communicated, or attempted to communicate, with Plaintiff, or anyone regarding Plaintiff's account, for a period of SIX (6) YEARS before the date of this request to the present.

**RESPONSE TO INTERROGATORY NO. 23:** Santander Consumer objects to this interrogatory as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR INTERROGATORY NO. 23:** Nelson needs this information because the debt collector employees at the facilities from which Santander made calls to Nelson and others will have relevant information on training, supervision, debt collection techniques, and may have information related to the calls made on Nelson's accounts. They may, for example, have overheard some of the conversations. They also may have overheard the debt collection techniques used by the particular debt collectors who made calls on Nelson's accounts while engaged in conversations with other consumers. These individuals may also have information related to Santander's pattern and practice of abusing and harassing consumers, which would support Nelson's claim for punitive damages.

**INTERROGATORY NO. 24:** Identify all lawsuits brought against Santander at any time arising out its collection or attempted collection activities, and for any reason, in the period THREE (3) YEARS before the date of this request to the present, by supplying the correct legal caption, the court file number, the jurisdiction, the date of filing, and the final disposition or current status.

**RESPONSE TO INTERROGATORY NO. 24:** Santander Consumer objects to this interrogatory as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR INTERROGATORY NO. 24:** Nelson needs this information for the same reasons set forth in Argument for Document Request No. 13 (pp. 8-9 above), which discusses the relevance of the information for general investigation into Santander's collection practices and Nelson's claim for punitive damages.

**INTERROGATORY NO. 25:** Identify all legal claims, equitable claims, regulatory complaints, regulatory reports, arbitrations, mediations, in-court settlements, out-of-court settlements, or any other proceedings, formal or informal, Better Business Bureau, Commerce Department, or other regulatory complaints made against Santander or its collection employees at any time arising out its collection or attempted collection activities, and for any reason, in the period THREE (3) YEARS before the date of this request to the present, by supplying the correct caption (if any), the name(s) of the complaining party, the file number, the jurisdiction, the date of filing, and the final disposition or current status of the claim, complaint or proceeding.

**RESPONSE TO INTERROGATORY NO. 25:** Santander Consumer objects to this interrogatory as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR INTERROGATORY NO. 25:** Nelson needs this information for the same reasons set forth in Argument for Document Request No. 13 (pp. 8-9 above), which

discusses the relevance of the information for general investigation into Santander's collection practices and Nelson's claim for punitive damages.

## IV. SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO SANTANDER

**REQUEST NO. 16:** Any and all documents summarizing, describing, instructing, detailing, or otherwise training any and all of Santander's employees in any and all of the following areas in the last SIX (6) YEARS:

      a. Collection policies;
      b. Collection procedures;
      c. Collection methods;
      d. Collection techniques;
      e. Collection tactics;
      f. Collection rules;
      g. Collection regulations; and
      h. Compliance with local, state, or federal laws, codes, or regulations.

**RESPONSE TO REQUEST NO. 16:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 16:** Nelson needs these documents for the same reasons set forth in Argument for Interrogatory No. 7 (p. 12 above), which discusses Santander's training of its employees regarding the collection of debts.

Nelson's counsel agreed to limit the timeframe for this interrogatory from the beginning of 2009 to the present. Santander indicated its willingness to supplement its response based on this limitation. To date, however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**REQUEST NO. 17:** Any and all training, personnel, or other instruction manuals used by any and all collection personnel who are employed by or supervised by Santander in the last SIX (6) YEARS.

**RESPONSE TO REQUEST NO. 17:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 17:** Nelson needs these documents for the same reasons set forth in Argument for Interrogatory No. 7 (p. 12 above), which discusses Santander's training of its employees regarding the collection of debts.

Nelson's counsel agreed to limit the timeframe for this interrogatory from the beginning of 2009 to the present. Santander indicated its willingness to supplement its response based on this limitation. To date, however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**REQUEST NO. 18:** Any and all collection software manuals and/or instruction guides for each and every computer system, software package, software system, telephone system, electronic device, or non-electronic device used in any manner by Santander in collecting debts SIX (6) YEARS.

**RESPONSE TO REQUEST NO. 18:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 18:** These documents are needed to investigate Santander's debt collection programs, how entries are recorded, and will show relevant information, such as which entries in the account notes are made manually versus those made by a computer program, and whether entries can be altered after they are made.

More than 90 days after receiving this request, Santander indicated its willingness to supplement its response. To date, however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**REQUEST NO. 19:** Any and all documents related to or evidencing any and all lawsuits, legal claims, equitable claims, regulatory complaints, regulatory reports, arbitrations, mediations, in-court settlements, out-of-court settlements, or any other proceedings, formal or informal, to which Santander has been named as a witness or a party, that have existed or been brought with respect to or involving Santander, and which involved as all or part of their subject matter debt collection activities, for a period of THREE (3) YEARS before the date of this request to the present.

**RESPONSE TO REQUEST NO. 19:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 19:** Nelson needs to investigate other complaints to determine if Santander was on notice that its employees engaged in illegal conduct and if any conduct engaged with Nelson was a mistake. Nelson also needs this information for the same reasons set forth in Argument for Document Request No. 13 (pp. 8-9 above), which discusses the relevance for general investigation into Santander's collection practices and Nelson's claim for punitive damages.

**REQUEST NO. 20:** Any and all personnel files, human resource department records, employment files, and other documents including but not limited to all disciplinary notices, performance appraisals, written or verbal reprimands, incident reports, job applications, résumés, memos, and or electronic recordings of collection communications that were the subject of private or other complaints by any person, for every Santander employee who communicated with or attempted to communicate with Plaintiff. PRIOR TO PRODUCTION, PLEASE REDACT INDIVIDUALS' SOCIAL SECURITY NUMBERS, MEDICAL INFORMATION, AND RETIREMENT PLAN INFORMATION.

**RESPONSE TO REQUEST NO. 20:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 20:** Nelson is entitled to these materials related to performance appraisals, reprimands, and incident reports Santander maintains on its employees. This information may be used by Nelson to show, for example, that Santander does not discipline employees who violate the FDCPA or WCA. If Santander, for instance, continues employing an employee who it has found made threats or harassed debtors, this would help Nelson prove her compensatory and punitive damages.

In National Labor Relations Board v. Pfizer Inc., 763 F.2d 887, 891 (7th Cir. 1985), the Court refused to adopt a rule that employee personnel files are *per se* confidential and reasoned:

> [w]hile we recognize that employee personnel files often contain sensitive information, (citation omitted) the contents of such records are by no means uniform. Some information contained in personnel files may be completely innocuous while other information could be of the most personal and sensitive nature. We believe, then, that the burden of showing a legitimate claim to confidentiality should be on the employer who is resisting production of the files.

The only justifiable reason for an employer to resist disclosure of personnel files is to protect the information from public disclosure. Grinzi v. Barnes, 2004 U.S. Dist. LEXIS 20979 (N.D. Cal. 2004). The proper mechanism for an employer to use to protect an employee's privacy interest in a personnel file is to obtain a protective order. (Id.) See e.g. Knoll v. AT&T, 176 F.3d 359 (6th Cir. 1999). An order preventing disclosure already exists in this case.

Nelson also needs this information for the same reasons set forth in Argument for Document Request No. 13 (pp. 8-9 above), which discusses the relevance for general investigation into Santander's collection practices and Nelson's claim for punitive damages, and Argument for Interrogatory No. 7 (p. 12 above), which discusses Santander's training of its employees regarding the collection of debts.

**REQUEST NO. 24:** Any and all printouts computer, mechanical or other reports printed, prepared, or otherwise created using any computer system, software package, software system, or other electronic or non-electronic device used in any manner by Santander to collect debts, which include Plaintiff's name, address, telephone number(s), account number, or any other information which is personally identifiable to Plaintiff. PLEASE PRODUCE THESE ITEMS IN THEIR NATIVE, READABLE, ELECTRONIC, AND SEARCHABLE FORMAT.

**RESPONSE TO REQUEST NO. 24:** Santander Consumer objects to this request as duplicative, overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 24:** Nelson needs to determine what information is available to Santander about the calls, and what information is available to Santander about the loans, and whether Nelson has been given all the information Santander has regarding the calls and the two loans.

More than 90 days after receiving this request, Santander indicated its willingness to supplement its response. To date, however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**REQUEST NO. 26:** Exemplars of any and all orientation, new hire, or any other manual given to natural persons employed by Santander to collect debts at the commencement of that person's employment, for a period of THREE (3) YEARS to the present.

**RESPONSE TO REQUEST NO. 26:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 26:** Many employers, especially larger and/or nationwide employers, provide information, instruction, guidelines and employment terms to employees in the form of an employee handbook or personnel manual. Employee handbooks and personnel manuals often include work rules, prohibited activities, hiring conditions, guidelines on acceptable employee conduct, disciplinary systems and rules, termination guidelines and much more. Nelson is attempting to discover what type of disciplinary system was in place at Santander, what instructions and guidelines were given to new employees and any requirements and prohibitions on work conduct that were in place. An employee handbook, or something similar, potentially contains discussions of all of these topics.

Seventh Circuit case law contains numerous references to the contents of employee handbooks. Some are: Peters v. Gilead Sciences, Inc., 533 F.3d 594 (7th Cir. 2008)(Family and Medical Leave issues); National Labor Relations Board v. Shelby Memorial Hospital Association, 1 F. 3d 550 (7th Cir. 1993)(restrictions on wearing pins or badges at work); Freeman v. Chicago Park District, 189 F. 3d 613, 80 Fair Empl. Prac. Cas. (BNA) 1678 (7th Cir. 1999)(company discrimination policy); Mires v. Landolfi, 908 F. 2d 975 (7th Cir. 1990)(disciplinary and termination procedures); Anstett v. Eagle-Picher Industries, Inc., 203 F. 3d 501(7th Cir. 2000)(separation benefits); Shaver v. F.W. Woolworth Co., 840 F. 2d 1361 (7th Cir. 1988)(seniority provisions); Duldulao v. St. Mary of Nazareth Hosp. Center, 115 Ill. 2d 482, 505 N.E. 2d 314 (1987)(disciplinary procedures); Enis v. Continental Illinois National Bank & Trust Co., 795 F. 2d 39(7th Cir. 1986)(terms for dismissal); Sharpe v. APAC Customer Services, Inc., No. 09-cv-329-bbc (W.D.Wis. 01/08/2010)(timekeeping policies in national employee handbook); Sjoblom v. Charter Communications, LLC, No. 07-cv-451-bbc (W.D.Wis. 03/24/2008)(company vehicle policy).

Santander's response does not state that it did not have an employee handbook or personnel manual or the like during the relevant time period, just that it refused to provide an answer to the request. Perhaps the employee handbook or personnel manual contains or does not contain specific instructions or prohibitions on collection conduct which Nelson alleges, or perhaps it includes a disciplinary process which might have been, or should have been, or was, implemented in this instance. Nelson needs the opportunity to investigate all such information.

In addition, Nelson needs these documents for the same reasons set forth in Argument for Interrogatory No. 7 (p. 12 above), which discusses Santander's training of its employees regarding the collection of debts.

More than 90 days after receiving this request, Santander indicated its willingness to supplement part of this response if the employee handbook(s) or personnel manual(s) included training materials regarding debt collection. To date, however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**REQUEST NO. 27:** Exemplars of any and all documents of whatever kind given to natural persons employed by Santander to collect debts at the commencement of that person's employment, for a period of THREE (3) YEARS to the present.

**RESPONSE TO REQUEST NO. 27:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 27:** Nelson needs these documents for the same reasons set forth in Argument for Request No. 26, which discusses employee handbook issues immediately above, and Argument for Interrogatory No. 7 ( p.12 above), which discusses Santander's training of its employees regarding the collection of debts.

**REQUEST NO. 29:** All documents related to Santander's disciplinary policy/policies for violating state and federal debt collection laws, and for violating other state or federal laws in the course of collecting debts of any kind.

**RESPONSE TO REQUEST NO. 29:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 29:** Nelson needs these documents for the same reasons set forth in Argument for Interrogatory No. 7 (p. 12 above), which discusses Santander's training of its employees regarding the collection of debts, and Argument for Requests Nos. 26 and 27 (pp. 21-22 above), which discuss employee handbooks and personnel manuals and other materials provided to employees at the start of employment.

**REQUEST NO. 30:** All documents that describe, record, or establish Santander's methods and techniques used to collect debts.

**RESPONSE TO REQUEST NO. 30:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 30:** This request goes to the heart of Nelson's claims. Nelson claims that Santander violated multiple statutes governing debt collection and the use of auto-dialers to collect debts. Nelson claims that Santander's employees harassed her and others in its attempts to collect money from Nelson. Therefore, Santander's claim that this information is not relevant is simply not true. If, for example, Santander does not have any established methods or techniques by which it collects debts, that would be relevant to Nelson's claims. And, if on the other hand, Santander has established methods and techniques that violate one or more debt collection laws, that would be relevant to Nelson's claims, too. Nelson also needs these documents for the same reasons set forth in Argument for Interrogatory No. 7 (p. 12 above), which discusses Santander's training of its employees regarding the collection of debts.

Nelson's counsel agreed to limit the timeframe for this interrogatory from the beginning of 2009 to the present. Santander indicated its willingness to supplement its response based on this limitation. To date, however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**REQUEST NO. 34:** The purchase and/or assignment agreement between HSBC and Santander which evidences the transfer, sale or assignment of Plaintiff's account to Santander by HSBC, and/or which evidences that HSBC gave Santander the right to service Plaintiff's account or conduct collection activities related to Plaintiff's account.

**RESPONSE TO REQUEST NO. 34:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information. Subject to these objections,

Santander Consumer states that a copy of the agreement evidencing the transfer, sale, or assignment of the class of accounts that includes Plaintiff's accounts to Santander Consumer will be produced.

**ARGUM ENT FOR REQUEST NO. 34:** Nelson needs this information for the same reasons set forth in Argument for Interrogatory No. 13 (p. 13 above), which discusses the deficiencies of the sales documents produced by Santander related to Nelson's loans. In addition, Santander needs to produce the documents that apply to the sale of Nelson's accounts, not to the sale of the "class" of accounts that includes Nelson's accounts.

**REQUEST NO. 39:** All documents evidencing Santander's security interest in Plaintiff's vehicles.

**RESPONSE TO REQUEST NO. 39:** Santander Consumer objects to this request as overbroad and unduly burdensome. Subject to these objections, Santander Consumer will produce documents sufficient to show that it possesses a security interest or interests in vehicles in the class of accounts that includes Plaintiff's accounts.

**ARGUMENT FOR REQUEST NO. 39:** Nelson needs this information for the same reasons set forth in Argument for Interrogatory No. 13(p. 13 above), which discusses the deficiencies of the sales documents produced by Santander related to Nelson's loans. In addition, Santander needs to produce the documents that apply to the security interests in Nelson's vehicles, not to the security interests in vehicles in the "class" of accounts that includes Nelson's accounts. This information also goes to Nelson's claims for illegal repossession.

More than 90 days after receiving this request, Santander indicated that it may supplement its response. To date, however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**REQUEST NO. 41:** All documents evidencing that Santander is the lender and servicer of Plaintiff's "Loan Agreements," as referenced in paragraph 9 of its Counterclaim.

**RESPONSE TO REQUEST NO. 41:** Santander Consumer objects to this request as duplicative, overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information. Subject to these objections, Santander has or will produce documents evidencing that it is the lender and/or servicer for the class of accounts that includes Plaintiff's accounts.

**ARGUMENT FOR REQUEST NO. 41:** Nelson needs this information for the same reasons set forth in Argument for Interrogatory No. 13 (p. 13 above), which discusses the deficiencies of the sales documents produced by Santander related to Nelson's loans.

More than 90 days after receiving this request, Santander indicated that it may supplement its response. To date, however, it has failed to provide either its supplementation, or a date by which it will provide any such supplement.

**REQUEST NO. 42:** All documents describing Santander's computerized, mechanical, manual, or other system(s) that Santander uses, maintains, or operates to record any and all mail, telephone, in-person, or other forms of communications, or attempted communications, with persons or other third parties in connection with the collection of accounts, and Santander's policies.

**RESPONSE TO REQUEST NO. 42:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 42:** Nelson needs these documents so she can determine how the program works that creates the Account Notes or call logs. Nelson also needs these documents so she can determine how Santander's computer and other systems operate, who has access to that information, who can access and/or manipulate that information, and whether it accurately records and reflects events.

**REQUEST NO. 43:** All consumer credit reports obtained by Santander for Plaintiff, along with the date of such report and its original source.

**RESPONSE TO REQUEST NO. 43:** Santander Consumer objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant to this litigation nor likely to lead to the discovery of relevant information.

**ARGUMENT FOR REQUEST NO. 43:** Nelson needs these documents to determine what, if any, information Santander received on Nelson and, more importantly, how it used that information in its attempts to collect money from her. Nelson also needs to determine whether Santander had the legal right to access that information.

### III.  SANTANDER SHOULD BE SANCTIONED PURSUANT TO FRCiv.P 37(a)

As explained in Section II of this Brief, Santander has failed to timely produce full responses to numerous requests in Nelson's first and second set of discovery requests.

Federal Rule of Civil Procedure 37(a)(5), pertaining to motions to compel discovery, provides, in pertinent part:

> Payment of Expenses; Protective Orders.
> (A)  If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> > (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> > (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> > (iii) other circumstances make an award of expenses unjust.
> (B)  If the Motion Is Denied. If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an

opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

(C) If the Motion Is Granted in Part and Denied in Part. If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Nelson asks this Court to award her reasonable expenses, including attorneys' fees, for bringing this motion, pursuant to FRCiv.P 37(a)(5).

## CONCLUSION

Based upon the foregoing arguments, Nelson respectfully asks the Court to:

A.   Grant Nelson's motion to compel discovery related to her first and second set of discovery requests, as explained above; and

B.   Award Nelson her reasonable expenses, including attorney's fees, for bringing her motion to compel, pursuant to Federal Rule of Civil Procedure 37(a)(5).

Dated this 3rd day of  October, 2012.

s/ Ivan Hannibal
**Mary Catherine Fons, SBN 1017000**
FONS LAW OFFICE
500 South Page Street
Stoughton, WI  53589
Phone: (608) 873-1270
Fax: (608) 873-0496

**Ivan Hannibal, SBN 1050360**
CONSUMER RIGHTS LAW OFFICE
5908 Running Deer Trail
McFarland, WI  53558
Phone: (608) 852-6702

**ATTORNEYS FOR PLAINTIFF**