# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

---

HEATHER NELSON,

        **Plaintiff,**

v.                                        **Civil Case No.:  3:11-cv-307**

SANTANDER CONSUMER USA, INC.,
PATRICK K. WILLIS, CO., INC., and
ASSETSBIZ CORP.,

        **Defendants.**

---

## PLAINTIFF'S RESPONSES TO DEFENDANT SANTANDER CONSUMER, USA, INC.'S PROPOSED FINDINGS OF FACT IN SUPPORT OF ITS' PARTIAL MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S ADDITIONAL FINDINGS OF FACT

---

Plaintiff, Heather Nelson, by her attorneys, Mary Catherine Fons of the Fons Law Office and Ivan Hannibal of the Consumer Rights Law Office, hereby responds to Defendant Santander Consumer USA, Inc.'s Proposed Findings of Fact ("DPFF") in Support of its' Partial Motion for Summary Judgment as follows:

    **DPFF 1.**  The First Claim for Relief set out in Plaintiff Heather Nelson's ("Plaintiff") Second Amended Complaint asserts a claim for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  (Second Am. Comp., attached hereto as Exh. A, at ¶¶ 59-63.)

    1.  Admit.

    **DPFF 2.**  The Third Claim for Relief set out in Plaintiff's Second Amended Complaint asserts a claim for violations of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (Second Am. Comp., Exh. A, at ¶¶ 69-73.)

    2.  Admit.

**DPFF 3.**  Because Plaintiff assets claims under federal statues, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1692k(d).

3.  Admit.

**DPFF 4.**  Plaintiff is an individual, and resides in Sun Prairie, Wisconsin.  (Second Am. Comp., Exh. A, at ¶ 3.)

4.  Admit.

**DPFF 5.**  Santander is an automobile finance company, with its principal place of business in Dallas, Texas.  Santander's principal business is organizing automobile retail installment sales contracts on direct and indirect lending program platforms.  (Answer to Second Am. Comp., attached hereto as Exh. B, at ¶ 6; Declaration of Wayne Nightengale dated January 7, 2013 ("Nightengale Dec."), attached hereto as Exh. C, at ¶ 5.)

5.  Disputed.  Santander still services loans where someone else owns the loans but where Santander services the loans.  (11/28/12 Deposition of Wayne Nightengale 59: 2-12)  Santander is a company that provides auto financing, handles servicing of other creditors' loans, and buys loan portfolios worth billions of dollars (11/28/12 Deposition of Wayne Nightengale 64: 16-65: 3; 69: 19-71:3)  Santander engages directly in debt collection.  (1/7/13 Declaration of Wayne Nightengale ¶ 4 ; 11/28/12 Deposition of Wayne Nightengale 75:23 – 78:24; 1/6/13 Affidavit of Heather Nelson, ¶¶ 1, 11, 13)

**DPFF 6.**  In 2005 Plaintiff purchased a 2004 Dodge Ram Truck and a 2005 Town and Country Minivan for personal use.  (Second Am. Comp., Ex. A, at ¶ 14.)

6.  Admit.

**DPFF 7.**  In 2007, plaintiff refinanced both loans with HSBC.  (Second Am. Comp., Exh. A, at ¶ 16.)

7.  Disputed.  In 2007, Heather Nelson refinanced the loan for her 2004 Dodge Ram truck and 2005 Chrysler Town and Country van with HSBC Auto Credit, Inc.  1/6/13 Affidavit of Heather Nelson, ¶¶ 9, 10)

**DPFF 8.**  Santander became the creditor on the loan secured by Plaintiff's minivan in March 2010, when it acquired the Loan Repayment and Security Agreement from HSBC.  (Nightengale Dec., Exh. C, at ¶¶ 5-6, 10.)

8. Disputed.  Santander does not know which of Nelson's loans it claims to have bought in March 2010 and which of Nelson's loans it claims to have bought in August 2010. (11/28/12 Deposition of Wayne Nightengale 96: 1-19; 97: 22-24; 98: 1-15).  Nightengale cannot testify to this because his Declaration does not contain any averments that he has the requisite personal knowledge regarding HSBC's creation and maintenance of business records; the Exhibit referenced in his Declaration is incomplete in that Exhibit A, referenced in the document, was not produced; the Bill of Sale does not reference assets purchased; Nightengale does not identify the exact date that Santander allegedly acquired Nelson's van loan, i.e., whether Santander's alleged purchase of Nelson's van loan occurred as part of the March 15, 2010 Bill of Sale or as part of some other bill of sale. Santander does not identify which HSBC entity it is referring to. Mr. Nightengale has not laid a proper foundation to make this averment. Moreover, whether Santander became the creditor on the loan secured by Plaintiff's minivan in March 2010 is a conclusion of law not appropriate for a finding of fact.

**DPFF 9.**  Santander became the creditor on the loan secured by Plaintiff's truck in August 2010, when it acquired that Loan Repayment and Security Agreement from HSBC.  (Nightengale Dec., Ex. C, at ¶¶ 5, 8, 10.)

9. Disputed.  Santander does not know which of Nelson's loans it claims to have bought in March 2010 and which of Nelson's loans it claims to have bought in August 2010. (11/28/12 Deposition of Wayne Nightengale 96: 1-19; 97: 22-24; 98: 1-15).  Nightengale cannot testify to this because his Declaration does not contain any averments that he has the requisite personal knowledge regarding HSBC's creation and maintenance of business records; the Exhibit referenced in his Declaration is incomplete in that Schedule A, referenced in the document, was not produced; the Bill of Sale does not reference assets purchased; Nightengale does not identify the exact date that Santander allegedly acquired Nelson's truck loan, i.e., whether Santander's alleged purchase of Nelson's truck loan occurred as part of the August 27,  2010 Bill of Sale or as part of some other bill of sale. Santander does not identify which HSBC entity it is referring to.  Mr. Nightengale has not laid a proper foundation to make this averment. Moreover, whether Santander became the creditor on the loan secured by Plaintiff's truck in August 2010 is a conclusion of law not appropriate for a finding of fact.

**DPFF 10.**  In about March 2010, Santander began the purchase of HSBC's entire auto-finance business, and its entire portfolio of existing auto-finance loans, without regard to whether the loans were current or in default.  (Nightengale Dec., Ex. C, at ¶ 6.)

10. Disputed.  Wayne Nightengale, a Senior Vice-President of Servicing for Santander, is not competent to testify as to whether Santander began the purchase of HSBC's entire auto-finance business and HSBC's entire portfolio existing auto-finance loans, because he did not make any averments that he had personal knowledge of the contents of HSBC's entire auto finance business or HSBC's portfolio of existing auto-finance loans. Mr. Nightengale has not laid a proper foundation to make this averment.

**DPFF 11.**  HSBC's auto-finance business included HSBC Auto Finance, Inc. and HSBC Auto

Finance's affiliates, including HSBC Auto Credit Inc., and HSBC Auto Accounts Inc. (collectively

"HSBC").  (Nightengale Dec., Ex. C, at ¶ 6.)

11. Disputed.  Wayne Nightengale, a Senior Vice-President of Servicing for Santander, is not
    competent to testify as to HSBC's auto-finance business and whether HSBC's auto-finance
    business included HSBC Auto Finance, Inc. and HSBC Auto Finance's affiliates, including
    HSBC Auto Credit Inc., and HSBC Auto Accounts Inc. because he did not make any averments
    that he had personal knowledge of the HSBC's auto- finance business. Mr. Nightengale has not
    laid a proper foundation to make this averment.

**DPFF 12.**  Santander's purchase of HSBC's auto-finance business was completed in August 2010.

(Nightengale Dec. at ¶8.)

12. Disputed.  Wayne Nightengale, a Senior Vice-President of Servicing for Santander, is not
    competent to testify as to whether Santander's purchase of HSBC's auto-finance business was
    completed in August 2010, because he did not make any averments that he had personal
    knowledge of the contents of HSBC's entire auto-finance business or HSBC's existing portfolio
    of loans.  Mr. Nightengale has not laid a proper foundation to make this averment.

**DPFF 13.**  Santander also acquired certain of HSBC's facilities through the acquisition, and

Santander assumed control of those facilities in March of 2010.  (Nightengale Dec., Exh. C, at ¶ 9.)

13. Disputed.  This proposed finding of fact is vague in that he does not specify the facilities or what
    acquisition he is referring to. Wayne Nightengale, a Senior Vice-President of Servicing for
    Santander, is not competent to testify as to whether Santander acquired certain of HSBC's
    facilities through the acquisition, and Santander assumed control of those facilities in March of
    2010 because he did not make any averments that would lead one to believe that a Vice-
    President of Servicing would have had personal knowledge of these facts.  Mr. Nightengale has
    not laid a proper foundation to testify that Santander acquired certain of HSBC's facilities
    through the acquisition, and Santander assumed control of those facilities in March of 2010.

**DPFF 14.**  Santander made individual offers to retain HSBC's former employees to continue

working at those facilities.  (Nightengale Dec., Exh. C, at ¶ 9.)

14. Disputed.  This proposed finding of fact is vague in that he does not specify the facilities he is
    referring to. Wayne Nightengale, a Senior Vice-President of Servicing for Santander, is not
    competent to testify as to whether Santander made individual offers to retain HSBC's former
    employees to continue working at facilities because he did not make any averments that would
    lead one to believe that a Vice-President of Servicing would have had personal knowledge of
    these facts.  Mr. Nightengale has not laid a proper foundation to testify that Santander made
    individual offers to retain former employees to continue working at facilities.

**DPFF 15.**  Santander does not operate as a third-party debt collector (i.e., collecting someone else's debt or the debt "of another") for the HSBC accounts, but purchased the Chrysler Minivan Account and Plaintiff's Dodge Truck Accounts as its own obligations.  (Nightengale Dec., Ex. C, at ¶ 11.)

15.  Disputed.  Santander still services loans where someone else owns the loans but where Santander services the loans.  (11/28/12 Deposition of Wayne Nightengale 59: 2-12)  Santander is a company that provides auto financing, handles servicing of other creditors' loans, and buys loan portfolios worth billions of dollars (11/28/12 Deposition of Wayne Nightengale 64: 16-65: 3; 69: 19-71:3)  Santander engages directly in debt collection.  (1/7/13 Declaration of Wayne Nightengale ¶ 4 ; 11/28/12 Deposition of Wayne Nightengale 75:23 – 78:24; 1/6/13 Affidavit of Heather Nelson, ¶¶ 1, 11, 13)  Whether Santander operates as a third-party debt collector is a conclusion of law, not appropriate for a finding of fact. Santander does not know which of Nelson's loans it claims to have bought in March 2010 and which of Nelson's loans it claims to have bought in August 2010. (11/28/12 Deposition of Wayne Nightengale 96: 1-19; 97: 22-24; 98: 1-15).  Nightengale cannot testify to this because his Declaration does not contain any averments that he has the requisite personal knowledge regarding HSBC's creation and maintenance of business records; the Exhibits referenced in his Declaration are incomplete in that Exhibit A and Schedule A, referenced in the documents, were not produced; the Bills of Sale do not reference assets purchased; Nightengale does not identify the exact date that Santander allegedly acquired Nelson's van or truck loan, i.e., whether Santander's alleged purchase of Nelson's van loan or truck loan occurred as part of the March 15, 2010 Bill of Sale, the August 27, 2010 Bill of Sale or as part of some other bill of sale. Santander does not identify which HSBC entity it is referring to. Mr. Nightengale has not laid a proper foundation to make this averment.

**DPFF 16.**  Plaintiff asserts a variety of claims against Santander and other defendants arising out of actions she alleges were taken in an effort to collect payments that were due under the two automobile finance agreements described above.  (Second Am. Comp., Ex. A, at Introduction.)

16.  Admit Nelson asserted a variety of claims against Santander and other defendants.  Dispute that allegations in and Introduction to a Complaint can support a finding of fact. Whether the payments were due under the two automobile finance agreements is a conclusion of law not appropriate for a finding of fact.

Plaintiff provides Additional Proposed Findings of Fact ("PPFF") as follows:

100.   In his Declaration, Nightengale avers that "HSBC's Loan Repayment and Security

Agreement relating to [Nelson's] Chrysler Minivan was sold to Santander in March 2010[,]" and

"HSBC's Loan Repayment and Security Agreement relating to [Nelson's] Dodge Truck was sold to

Santander in August 2010." (1/7/13 *Nightengale Declaration*, ¶¶ 6-8; Dkt 82)

101.    In his November 28, 2012, deposition, Nightengale could not recall or testify about

which of Nelson's loans was allegedly sold by HSBC to Santander in March and which was allegedly

sold in August. (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 96:1-

19; 97: 22-24; 98: 1-15)

102.    On October 30, 2012, Nelson's counsel served a notice of corporate designee deposition

on Santander. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 15; Dkt 85)  Three of the topics identified

in the notice included:

> All communications between Santander and any other individual or entity regarding
> Heather Nelson or her accounts, including the identity of the participants in the
> communication, the date and time of the communication and the content and substance
> of the communication, as well as all records of contacts with Heather Nelson and third
> parties concerning Heather Nelson's accounts.

 (*Id*., ¶ 16)

> The loan transactions between Heather Nelson and HSBC or Santander or their
> predecessors, if any.

(*Id*.)

> The process, events, terms, and circumstances under which the debts allegedly owed by
> Heather Nelson were referred, placed, sold, sent for servicing, or otherwise assigned
> and/or transferred to Santander, and the identification of all documents relevant to,
> related to, or reflecting such referral, servicing, placement, sale or assignment.

(*Id*.)

> Santander did not seek or obtain a protective order regarding Nelson's notice of deposition.

(*Id*., ¶ 17)

103.    On November 28, 2012, Nelson's counsel deposed Wayne Nightengale, Santander's

30(b)(6) corporate designee representative in Chicago, Illinois. (1/15/13 *Affidavit of Mary Catherine*

*Fons*, ¶ 18; Dkt 85)

- 6 -

104.    Even though Santander was on notice that Nelson would be inquiring into the process, events, terms, and circumstances under which Nelson's loans were referred, placed, sold, sent for servicing or otherwise assigned to Santander, Santander's 30(b)(6) corporate designee, Wayne Nightengale, could not tell Nelson which of her two loans was allegedly acquired or purchased by Santander in March of 2010, and which was allegedly acquired or purchased in August 2010, without looking at the loan servicing agreement between Santander and HSBC.  (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 96:1-19; 97: 22-24; 98: 1-15)

105.    Nightengale then admitted that Santander did not produce the entire loan servicing agreement between Santander and HSBC to Nelson prior to the deposition.  (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 96:1-19; 97: 22-24; 98: 1-15)

106.    Although copies of every document Santander produced in discovery up to the date of deposition were brought to the deposition by Nelson's counsel, Nightengale recognized that the documents needed to answer the question of which of Nelson's loans Santander claimed it purchased in March 2010 and which it claimed it purchased in August 2010 had not been provided by Santander to Nelson's counsel.  (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 96:1-19; 97: 22-24; 98: 1-15)

107.    Exhibit D to the Declaration of Wayne Nightengagle is purported by Santander to be an "Asset Sale and Purchase, Assignment and Assumption Agreement" dated August 27, 2010 between Santander and HSBC Auto Receivables Corporation and HSBC Finance Corporation.  (Dkt 82 at p. 3, ¶ 8, Ex. D)

108.    Exhibit E to the Declaration of Wayne Nightengagle is purported by Santander to be an "Asset Purchase Agreement" dated August 27, 2010, between Santander and HSBC Auto Finance, Inc., HSBC Auto Credit, Inc., HSBC Auto Accounts Inc., HSBC Processing Services (USA) Inc., HSBC Bank USA, National Association, Timberlink Settlement Services (USA) Inc., and Certain

- 7 -

Other Affiliates of HAF Parties Hereto.  (Dkt 82 at p. 3, ¶ 8, Ex. E)

109.    Santander failed to either produce the "Asset Sale and Purchase, Assignment and Assumption Agreement" and the "Asset Purchase Agreement," or describe by category either of the two documents in its Initial Disclosures pursuant to FRCP 26(a)(1). (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 7, Ex. A; Dkt 85)

110.    In its July 26, 2011, Initial Disclosure, Santander only identified three broad categories of documents to support its claims and defenses: 1) "Documents relating to Plaintiff's Santander loan files"; 2) "Any correspondence between Defendants and Plaintiff"; and 3) "All documents produced by Plaintiff, or third parties in the course of this litigation."  (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 7, Ex. A; Dkt 85)

111.    At no point between July 26, 2011, the date of its Initial Disclosure, and December 27, 2012, the date it produced the "Asset Sale and Purchase, Assignment and Assumption Agreement," did Santander inform Nelson's counsel that it would be using that document to support its defense to Nelson's FDCPA claim. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 8; Dkt 85)

112.    Likewise, at no point between July 26, 2011, the date of its Initial Disclosure, and January 4, 2013, the date it produced the "Asset Purchase Agreement," did Santander inform Nelson's counsel that it would be using that document to support its defense to Nelson's FDCPA claim. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 9; Dkt 85)

113.    Santander never supplemented or amended its Federal Rule of Civil Procedure 26(a)(1) Initial Disclosure, and therefore never informed Nelson that it intended on using the "Asset Sale and Purchase, Assignment and Assumption Agreement," or "Asset Purchase Agreement," to support its claims or defenses. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 10; Dkt 85)

114.    On June 14, 2012, Nelson's counsel served the following interrogatory on Santander:

In the form of a chronology, identify and describe in detail and with particularity, the process, events, and circumstances under which the debts allegedly owed by Plaintiff was referred, placed, sold or otherwise assigned to Santander for collection, identifying

all documents relevant to, related to, or reflecting such referral, placement, sale or assignment.

(1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 11; Dkt 85)

On June 14, 2012, Nelson's counsel also served the following document requests on Santander:

Any and all documents in the possession or control of Santander that it claims are in any way relevant to the subject matter of the instant lawsuit.

(*Id.*)

All documents known to Santander, which are related to or contain information about the debt being collected from Plaintiff.

(*Id.*)

The purchase and/or assignment agreement between HSBC and Santander which evidences the transfer, sale or assignment of Plaintiff's account to Santander by HSBC, and/or which evidences that HSBC gave Santander the right to service Plaintiff's account or conduct collection activities related to Plaintiff's account.

(*Id.*)

All documents evidencing Santander's security interest in Plaintiff's vehicles.

(*Id.*)

All documents evidencing that Santander is the lender and servicer of Plaintiff's "Loan Agreements," as referenced in paragraph 9 of its Counterclaim.

(*Id.*)

115.    Santander failed to provide either the "Asset Sale and Purchase, Assignment and Assumption Agreement" or "Asset Purchase Agreement" in its original responses to Nelson's June 14, 2012, discovery requests to Santander. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 12; Dkt 85)

116.    Nelson's counsel also wrote and sent Santander's counsel four letters, dated July 23, 2012, August 21, 2012, October 29, 2012, and December 3, 2012, asking for documents responsive to the above-referenced document requests. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 13; Dkt 85)

117.    Santander failed to produce the Asset Sale and Purchase, Assignment and Assumption Agreement" and "Asset Purchase Agreement," however. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶¶

8-9; Dkt 85)

118.    On August 21, 2012, September 18, 2012, October 23, 2012, Nelson's counsel held meet-and-confer conferences via telephone with Santander's counsel to try and obtain documents responsive to the above-referenced document requests. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 14; Dkt 85)

119.    Santander failed to produce the Asset Sale and Purchase, Assignment and Assumption Agreement" and "Asset Purchase Agreement," however. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 7-8; Dkt 85)

120.    Even though Nelson attempted many times to obtain the documents related to Santander's claims that it had the right to service either of Nelson's loans and that it purchased the loans from HSBC, Santander continually failed to provide the "Asset Sale and Purchase, Assignment and Assumption Agreement" and "Asset Purchase Agreement." (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 7-8; Dkt 85)

121.    In Paragraph 4 of his Declaration, Nightengale avers that:

Santander maintains computerized records of the contract documents, payment history, and account notes for each retail installment sales contract of which it purchased from the selling dealer and for each vehicle in which Santander holds a security interest.  In my capacity as Senior Vice-President, I have custody and access to Santander's business records relating to Heather Nelson ("Plaintiff"), and in particular, (i) the Loan Repayment and Security Agreement that Plaintiff entered with HSBC on or about February 9, 2007 for the Dodge Truck, with corresponding Santander account number 30000120223271000 ("Exhibit A") and (ii) the Loan Repayment and Security Agreement that Plaintiff entered with HSBC or on about February 4, 2007 for the Chrysler Minivan, with corresponding account number 300000120213451000 ("Exhibit B") (collectively, the "Accounts").  Entries in these account files were made on or about the dates of the events that are recorded therein and/or on or about the dates the documents bear.  These entries are made, and such documents are created or retained, in the ordinary course of Santander's business by customer service representatives and collections agents who are or were regularly employed by Santander and whose duties are to make such entries and/or to create and/or retain such documents.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 4)

122.    In Paragraph 6 of Nightengale's Declaration, he avers that:

In about March 2010, Santander began the purchase of HSBC's entire auto-finance business, and its entire portfolio of existing auto-finance loans, without regard to whether the loans were current or in default.  HSBC's auto-finance business included HSBC Auto Finance Inc., and HSBC Auto Finance Inc.'s affiliates, including HSBC Auto Credit Inc., and HSBC Auto Accounts Inc. (collectively "HSBC").  A copy of the Bill of Sale dated March 15, 2010 to Santander is attached hereto as Exhibit C.  HSBC's Loan Repayment and Security Agreement relating to the Chrysler Minivan was sold to Santander in March 2010.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 6)

123.    When asked whether the March 15, 2010, Bill of Sale applied to Nelson's van or truck loan at his deposition, Nightengale stated that he did not know. (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 134: 16- 138: 20)

124.    In Paragraph 7 of Nightengale's Declaration, he avers that:

As part of the transaction, Santander began servicing the loans in March 2010 prior to completing the purchase and owning such loans in August 2010.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 7)

125.    In Paragraph 8 of Nightengale's Declaration, he avers that:

Santander's purchase of HSBC's auto-finance business was completed in August 2010.  A copy of the Santander Asset Sale and Purchase, Assignment and Assumption Agreement dated August 27, 2010 is attached hereto as Exhibit D.  A copy of the Asset Purchase Agreement as to certain HSBC Auto Finance Inc. affiliates dated August 27, 2010 is attached as Exhibit E.  A Bill of Sale for affiliates of HSBC Auto Finance, Inc. dated August 27, 2010 is attached as Exhibit F.  HSBC's Loan Repayment and Security Agreement relating to Plaintiff's Dodge Truck was sold to Santander in August 2010.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 8)

126.    In Paragraph 3 of his Declaration, Nightengale states that:

My job responsibilities include, among other tasks, being familiar with Santander's policies and procedures, and document retention practices for various customer account records and files, including customer account notes, sales contracts, and other customer records.  In my position, I have access to Santander's historical records for all accounts maintained by Santander.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 3)

127.     The Asset Sale and Purchase Assignment and Assumption Agreement states that HSBC Auto Receivables Corporation (apparently different from HSBC Auto Credit, the "HSBC" referred to in this case) is the seller and Santander is the purchaser.  (1/7/13 *Declaration of Wayne Nightengale ¶ 8*, Ex. D, Bates Stamp SCUSA 3168)

128.     HSBC Auto Receivables, according to the Asset Sale and Purchase Assignment and Assumption Agreement, is selling Santander "Securitization Assets."  (1/7/13 *Declaration of Wayne Nightengale ¶ 8*, Ex. D, Bates Stamp SCUSA 3168)

129.     The Securitization Assets include the sale and servicing agreements set forth in Schedule A to the Asset Sale and Purchase Assignment and Assumption Agreement.  (1/7/13 *Declaration of Wayne Nightengale ¶ 8*, Ex. D, Bates Stamp SCUSA 3174, 3175 and 3199)

130.     Schedule A refers to various documents, including: 1) 2006-1 Sale and Servicing Agreement; 2) 2006-2 Sale and Servicing Agreement; 3) 2006 Sale and Servicing Agreement; 4) 2007-1 Sale and Servicing Agreement; 5) Series 2006-1 Series Supplement; 6) Series 2006-2 Series Supplement; 7) Series 2006-3 Series Supplement; 7) Series 2007-1 Series Supplement; 8) 2006-1 Trust Agreement; 9) 2006-2 Trust Agreement; 10) 2006-3 Trust Agreement; and 11) 2007-1 Trust Agreement. (1/7/13 *Declaration of Wayne Nightengale ¶ 8*, Ex. D, Bates 3199 and 3200)

131.     The Asset Purchase Agreement identifies a Bond Administration Agreement and four Servicing Transfer Agreements in its "List of Securitization Transfer Documents," which are not included in Nightengale's Declaration.  (1/7/13 *Declaration of Wayne Nightengale ¶ 8*, Ex. E, Bates Stamp SCUSA 3708)

132.     The Asset Purchase Agreement is between Santander and HSBC Auto Finance, Inc., HSBC Auto Credit, Inc., HSBC Auto Accounts Inc., HSBC Processing Services (USA) Inc., HSBC Bank USA, National Association, Timberlink Settlement Services (USA) Inc., and Certain Other Affiliates of HAF Parties Hereto. (1/7/13 *Declaration of Wayne Nightengale ¶ 8*, Ex. E, Bates Stamp SCUSA 3655)

133.    When asked whether the August 27, 2010, Bill of Sale applied to Nelson's van or truck loan at his deposition, Nightengale stated that he did not know. (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 138: 21- 139: 12)

134.    In Paragraph 10 of Nightengale's Declaration, he avers that:

As part of the acquisition, HSBC's records, letters, and account and contract documents contained in HSBC's electronic and/or hard files were also transferred in whole to Santander, without change, as they were maintained in the ordinary course of HSBC's business.   HSBC's records related to Plaintiff's account were transferred in whole without alteration by Santander in about March 2010, and became Santander's business records.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 10)

135.    In Paragraph 11 of Nightengale's Declaration, he avers that:

Santander does not operate as a third-party debt collector (i.e., collecting someone else's debt or the debt "of another") for the HSBC accounts, but purchased [Nelson's] Chrysler Minivan Account and [Nelson's] Dodge Truck as its own obligations that Santander purchased pursuant to Exhibits D and E above.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 11)

136.    Nightengale testified that Santander bought one of the loans in March 2010. (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 97: 22-24; 98: 1-15)  He also testified that Santander obtained servicing rights on one of the loans in March 2010. (*Id*.)   He also testified that Santander bought the loan on which it obtained servicing rights in August 2010.  (*Id*.)

137.    Santander acquired Nelson's loans when they were in default.  (*Santander Consumer USA, Inc.'s Amended Answer to Plaintiff's Second Amended Complaint*, p. 2; 11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale,* pp. 125: 23 – 126: 2; 127: 9-11)

138.    Santander claims that it purchased Nelson's van loan in March 2010, and purchased Nelson's truck loan in August 2010. (1/7/13 *Declaration of Wayne Nightengale*, ¶¶ 6-8)

139.    Santander claims that it began servicing the HSBC loans in March 2010 prior to completing the purchase and owning such loans in August 2010. (1/7/13 *Declaration of Wayne Nightengale*, ¶¶ 6-8)

Dated this 28th day of January, 2013.

s/ Ivan Hannibal
**Mary Catherine Fons, SBN 1017000**
FONS LAW OFFICE
500 South Page Street
Stoughton, WI  53589
Phone: (608) 873-1270
Fax: (608) 873-0496

**Ivan Hannibal, SBN 1050360**
CONSUMER RIGHTS LAW OFFICE
5908 Running Deer Trail
McFarland, WI  53558
Phone: (608) 852-6702

**ATTORNEYS FOR PLAINTIFF**