## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

**HEATHER NELSON**

     **Plaintiff,**

**v.**

        **Civil Case No.:  3:11-cv-307**

**SANTANDER CONSUMER USA, INC.,
PATRICK K. WILLIS, CO., INC., and
ASSETSBIZ CORP.,**

     **Defendants.**

## SANTANDER CONSUMER, USA, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO THE PROPOSED FINDINGS OF FACT IN SUPPORT OF SANTANDER'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S ADDITIONAL PROPOSED FINDINGS OF FACT

Defendant, Santander Consumer USA, Inc., by and through its attorneys, Reed Smith LLP, hereby replies to Plaintiff, Heather Nelson's, Response to the Proposed Findings of Fact in Support of Santander's Partial Motion for Summary Judgment and responds to Plaintiff's additional Proposed Findings of Fact as follows:

**DPFF 1.** The First Claim for Relief set out in Plaintiff Heather Nelson's ("Plaintiff") Second Amended Complaint asserts a claim for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Second Am. Comp., attached hereto as Exh. A, at ¶¶ 59-63.)

    1.    Admit.

**DPFF 2.** The Third Claim for Relief set out in Plaintiff's Second Amended

1

Complaint asserts a claim for violations of the Federal Telephone Consumer Protection

Act, 47 U.S.C. § 227 et seq. (Second Am. Comp., Exh. A, at ¶¶ 69-73.)

    2.    Admit.

**DPFF 3.** Because Plaintiff assets claims under federal statues, this Court has

subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1692k(d).

    3.    Admit.

**DPFF 4.** Plaintiff is an individual, and resides in Sun Prairie, Wisconsin. (Second

Am. Comp., Exh. A, at ¶ 3.)

    4.    Admit.

**DPFF 5.** Santander is an automobile finance company, with its principal place of

business in Dallas, Texas. Santander's principal business is organizing automobile retail

installment sales contracts on direct and indirect lending program platforms. (Answer to

Second Am. Comp., attached hereto as Exh. B, at ¶ 6; Declaration of Wayne Nightengale

dated January 7, 2013 ("Nightengale Dec."), attached hereto as Exh. C, at ¶ 5.)

    5.    Disputed.  Santander still services loans where someone else owns the loans
but where Santander services the loans.  (11/28/12 Deposition of Wayne Nightengale 59:
2-12) Santander is a company that provides auto financing, handles servicing of other
creditors' loans, and buys loan portfolios worth billions of dollars (11/28/12 Deposition of
Wayne Nightengale 64: 16-65:3; 69: 19-71:3) Santander engages directly in debt
collection. (1/7/13 Declaration of Wayne Nightengale ¶ 4; 11/28/12 Deposition of Wayne
Nightengale 75:23 - 78:24; 1/6/13 Affidavit of Heather Nelson, ¶¶ 1, 11, 13)

**REPLY:** Plaintiff's dispute is not well-taken. The additional alleged facts stated by

Plaintiff in response do not raise a dispute as to the facts asserted in DPFF 5. Santander

disputes that it is a debt collector as defined by the Fair Debt Collection Practices Act.

2

(11/20/12 Santander Consumer USA, Inc.'s Amended Answer to Plaintiff's Second
Amended Complaint ("Am. Answer to Second Am. Comp."), at ¶ 7.)

**DPFF 6.** In 2005 Plaintiff purchased a 2004 Dodge Ram Truck and a 2005 Town

and Country Minivan for personal use. (Second Am. Comp., Ex. A, at ¶ 14.)

6.    Admit.

**DPFF 7.** In 2007, Plaintiff refinanced both loans with HSBC. (Second Am.

Comp., Exh. A, at ¶ 16.)

7.    Disputed. In 2007, Heather Nelson refinanced the loan for her 2004 Dodge
Ram truck and 2005 Chrysler Town and Country van with HSBC Auto Credit, Inc.
1/6/13 Affidavit of Heather Nelson, ¶¶ 9, 10)

**REPLY:** Santander does not dispute the additional facts stated by Plaintiff in response to

DPFF 7.

**DPFF 8.** Santander became the creditor on the loan secured by Plaintiff's minivan

in March 2010, when it acquired the Loan Repayment and Security Agreement from

HSBC. (Nightengale Dec., Exh. C, at ¶¶ 5-6, 10.)

8.    Disputed. Santander does not know which of Nelson's loans it claims to have
bought in March 2010 and which of Nelson's loans it claims to have bought in August
2010. (11/28/12 Deposition of Wayne Nightengale 96: 1-19; 97: 22-24; 98: 1-15).
Nightengale cannot testify to this because his Declaration does not contain any averments
that he has the requisite personal knowledge regarding HSBC's creation and maintenance
of business records; the Exhibit referenced in his Declaration is incomplete in that Exhibit
A, referenced in the document, was not produced; the Bill of Sale does not reference
assets purchased; Nightengale does not identify the exact date that Santander allegedly
acquired Nelson's van loan, i.e., whether Santander's alleged purchase of Nelson's van
loan occurred as part of the March 15, 2010 Bill of Sale or as part of some other bill of
sale. Santander does not identify which HSBC entity it is referring to. Mr. Nightengale
has not laid a proper foundation to make this averment. Moreover, whether Santander

3

became the creditor on the loan secured by Plaintiff's minivan in March 2010 is a
conclusion of law not appropriate for a finding of fact.

**REPLY**: Plaintiff's dispute is not well-taken. Plaintiff does not dispute the substantive

fact proffered, and therefore it should be deemed admitted. Wayne Nightengale has the

requisite personal knowledge to testify as per his declaration; the testimony set out in the

Nightengale Declaration and the Exhibits referenced in his declaration provide the

evidence needed to support the motion for summary judgment; the factual averments and

foundation are adequate and correct.   *See* extensive analysis set forth in *Reply*

*Memorandum of Law in Support of Defendant Santander Consumer USA, Inc.'s Partial*

*Motion for Summary Judgment* at 2-14.

**DPFF 9.** Santander became the creditor on the loan secured by Plaintiff's truck in

August 2010, when it acquired that Loan Repayment and Security Agreement from

HSBC. (Nightengale Dec., Ex. C, at ¶¶ 5, 8, 10.)

9. Disputed. Santander does not know which of Nelson's loans it claims to have
bought in March 2010 and which of Nelson's loans it claims to have bought in August
2010. (11/28/12 Deposition of Wayne Nightengale 96: 1-19; 97: 22-24; 98: 1-15).
Nightengale cannot testify to this because his Declaration does not contain any averments
that he has the requisite personal knowledge regarding HSBC's creation and maintenance
of business records; the Exhibit referenced in his Declaration is incomplete in that
Schedule A, referenced in the document, was not produced; the Bill of Sale does not
reference assets purchased; Nightengale does not identify the exact date that Santander
allegedly acquired Nelson's truck loan, i.e., whether Santander's alleged purchase of
Nelson's truck loan occurred as part of the August 27, 2010 Bill of Sale or as part of
some other bill of sale. Santander does not identify which HSBC entity it is referring to.
Mr. Nightengale has not laid a proper foundation to make this averment. Moreover,
whether Santander became the creditor on the loan secured by Plaintiff's truck in August
2010 is a conclusion of law not appropriate for a finding of fact.

**REPLY**: Plaintiff's dispute is not well-taken. Plaintiff does not dispute the substantive

fact proffered, and therefore it should be deemed admitted. Wayne Nightengale has the

requisite personal knowledge to testify as per his declaration; the testimony set out in the
Nightengale Declaration and the Exhibits referenced in his declaration provide the
evidence needed to support the motion for summary judgment; the factual averments and
foundation are adequate and correct.    *See* extensive analysis set forth in *Reply*
*Memorandum of Law in Support of Defendant Santander Consumer USA, Inc.'s Partial*
*Motion for Summary Judgment* at 2-14.

**DPFF 10.**  In about March 2010, Santander began the purchase of HSBC's entire
auto-finance business, and its entire portfolio of existing auto-finance loans, without
regard to whether the loans were current or in default. (Nightengale Dec., Ex. C, at ¶ 6.)

10. Disputed. Wayne Nightengale, a Senior Vice-President of Servicing for
Santander, is not competent to testify as to whether Santander began the purchase of
HSBC's entire auto-finance business and HSBC's entire portfolio existing auto-finance
loans, because he did not make any averments that he had personal knowledge of the
contents of HSBC's entire auto finance business or HSBC's portfolio of existing auto-
finance loans. Mr. Nightengale has not laid a proper foundation to make this averment.

**REPLY**: Plaintiff's dispute is not well-taken. Plaintiff does not dispute the substantive
fact proffered, and therefore it should be deemed admitted. Wayne Nightengale has the
requisite personal knowledge to testify as per his declaration; the factual averments and
foundation are adequate and correct.    *See* extensive analysis set forth in *Reply*
*Memorandum of Law in Support of Defendant Santander Consumer USA, Inc.'s Partial*
*Motion for Summary Judgment* at 2-14.

**DPFF 11.**  HSBC's auto-finance business included HSBC Auto Finance, Inc. and
HSBC Auto Finance's affiliates, including HSBC Auto Credit Inc., and HSBC Auto
Accounts Inc. (collectively "HSBC"). (Nightengale Dec., Ex. C, at ¶ 6.)

11. Disputed.  Wayne Nightengale, a Senior Vice-President of Servicing for

5

Santander, is not competent to testify as to HSBC's auto-finance business and whether HSBC's auto-finance business included HSBC Auto Finance, Inc. and HSBC Auto Finance's affiliates, including HSBC Auto Credit Inc., and HSBC Auto Accounts Inc. because he did not make any averments that he had personal knowledge of the HSBC's auto- finance business. Mr. Nightengale has not laid a proper foundation to make this averment.

**REPLY:** Plaintiff's dispute is not well-taken. Plaintiff does not dispute the substantive fact proffered, and therefore it should be deemed admitted. Wayne Nightengale has the requisite personal knowledge to testify as per his declaration; the factual averments and foundation are adequate and correct. *See* extensive analysis set forth in *Reply Memorandum of Law in Support of Defendant Santander Consumer USA, Inc.'s Partial Motion for Summary Judgment* at 2-14.

**DPFF 12.** Santander's purchase of HSBC's auto-finance business was completed in August 2010. (Nightengale Dec. at ¶8.)

12. Disputed. Wayne Nightengale, a Senior Vice-President of Servicing for Santander, is not competent to testify as to whether Santander's purchase of HSBC's auto-finance business was completed in August 2010, because he did not make any averments that he had personal knowledge of the contents of HSBC's entire auto-finance business or HSBC's existing portfolio of loans. Mr. Nightengale has not laid a proper foundation to make this averment.

**REPLY:** Plaintiff's dispute is not well-taken. Plaintiff does not dispute the substantive fact proffered, and therefore it should be deemed admitted. Wayne Nightengale has the requisite personal knowledge to testify as per his declaration; the factual averments and foundation are adequate and correct. *See* extensive analysis set forth in *Reply Memorandum of Law in Support of Defendant Santander Consumer USA, Inc.'s Partial Motion for Summary Judgment* at 2-14.

6

**DPFF 13.** Santander also acquired certain of HSBC's facilities through the

acquisition, and Santander assumed control of those facilities in March of 2010.

(Nightengale Dec., Exh. C, at ¶ 9.)

13. Disputed. This proposed finding of fact is vague in that he does not specify
the facilities or what acquisition he is referring to. Wayne Nightengale, a Senior Vice-
President of Servicing for Santander, is not competent to testify as to whether Santander
acquired certain of HSBC's facilities through the acquisition, and Santander assumed
control of those facilities in March of 2010 because he did not make any averments that
would lead one to believe that a Vice-President of Servicing would have had personal
knowledge of these facts. Mr. Nightengale has not laid a proper foundation to testify that
Santander acquired certain of HSBC's facilities through the acquisition, and Santander
assumed control of those facilities in March of 2010.

**REPLY:** Plaintiff's dispute is not well-taken. Plaintiff does not dispute the substantive

fact proffered, and therefore it should be deemed admitted. Wayne Nightengale has the

requisite personal knowledge to testify as per his declaration; the factual averments and

foundation are adequate and correct. _See_ extensive analysis set forth in _Reply_

_Memorandum of Law in Support of Defendant Santander Consumer USA, Inc.'s Partial_

_Motion for Summary Judgment_ at 2-14.

**DPFF 14.** Santander made individual offers to retain HSBC's former employees

to continue working at those facilities. (Nightengale Dec., Exh. C, at ¶ 9.)

14. Disputed. This proposed finding of fact is vague in that he does not specify
the facilities he is referring to. Wayne Nightengale, a Senior Vice-President of Servicing
for Santander, is not competent to testify as to whether Santander made individual offers
to retain HSBC's former employees to continue working at facilities because he did not
make any averments that would lead one to believe that a Vice-President of Servicing
would have had personal knowledge of these facts. Mr. Nightengale has not laid a proper
foundation to testify that Santander made individual offers to retain former employees to
continue working at facilities.

**REPLY:** Plaintiff's dispute is not well-taken. Plaintiff does not dispute the substantive

fact proffered, and therefore it should be deemed admitted. The averment is not vague,

7

and Wayne Nightengale has the requisite personal knowledge to testify as per his

declaration; the factual averments and foundation are adequate and correct. *See* extensive

analysis set forth in *Reply Memorandum of Law in Support of Defendant Santander*

*Consumer USA, Inc.'s Partial Motion for Summary Judgment* at 2-14.

**DPFF 15.** Santander does not operate as a third-party debt collector (i.e.,

collecting someone else's debt or the debt "of another") for the HSBC accounts, but

purchased the Chrysler Minivan Account and Plaintiff's Dodge Truck Accounts as its

own obligations. (Nightengale Dec., Ex. C, at ¶ 11.)

15. Disputed. Santander still services loans where someone else owns the loans
but where Santander services the loans. (11/28/12 Deposition of Wayne Nightengale 59:
2-12) Santander is a company that provides auto financing, handles servicing of other
creditors' loans, and buys loan portfolios worth billions of dollars (11/28/12 Deposition of
Wayne Nightengale 64: 16-65:3; 69: 19-71:3) Santander engages directly in debt
collection. (1/7/13 Declaration of Wayne Nightengale ¶ 4 ; 11/28/12 Deposition of
Wayne Nightengale 75:23 - 78:24; 1/6/13 Affidavit of Heather Nelson, ¶¶ 1, 11, 13)
Whether Santander operates as a third-party debt collector is a conclusion of law, not
appropriate for a finding of fact. Santander does not know which of Nelson's loans it
claims to have bought in March 2010 and which of Nelson's loans it claims to have
bought in August 2010. (11/28/12 Deposition of Wayne Nightengale 96: 1-19; 97: 22-24;
98: 1-15). Nightengale cannot testify to this because his Declaration does not contain any
averments that he has the requisite personal knowledge regarding HSBC's creation and
maintenance of business records; the Exhibits referenced in his Declaration are
incomplete in that Exhibit A and Schedule A, referenced in the documents, were not
produced; the Bills of Sale do not reference assets purchased; Nightengale does not
identify the exact date that Santander allegedly acquired Nelson's van or truck loan, i.e.,
whether Santander's alleged purchase of Nelson's van loan or truck loan occurred as part
of the March 15, 2010 Bill of Sale, the August 27, 2010 Bill of Sale or as part of some
other bill of sale. Santander does not identify which HSBC entity it is referring to. Mr.
Nightengale has not laid a proper foundation to make this averment.

**REPLY:** Plaintiff's dispute is not well-taken. Plaintiff's first three additional alleged

facts stated in response do not raise a dispute as to the HSBC portfolio loans, and

Santander denies that it was a debt collector as defined by the Fair Debt Collection

Practices Act. (Am. Answer to Second Am. Comp., at ¶ 7). Wayne Nightengale has the requisite personal knowledge to testify as per his declaration; the testimony set out in the Nightengale Declaration and the Exhibits referenced in his declaration provide the evidence needed to support the motion for summary judgment; the factual averments and foundation are adequate and correct. _See_ extensive analysis set forth in _Reply Memorandum of Law in Support of Defendant Santander Consumer USA, Inc.'s Partial Motion for Summary Judgment_ at 2-14.

**DPFF 16.** Plaintiff asserts a variety of claims against Santander and other defendants arising out of actions she alleges were taken in an effort to collect payments that were due under the two automobile finance agreements described above. (Second Am. Comp., Ex. A, at Introduction.)

16. Admit Nelson asserted a variety of claims against Santander and other defendants. Dispute that allegations in an Introduction to a Complaint can support a finding of fact. Whether the payments were due under the two automobile finance agreements is a conclusion of law not appropriate for a finding of fact.

**REPLY:** Santander does not dispute the facts set forth in the first two sentences Nelson's response. Santander disputes the last sentence, as Plaintiff testified that she was late on payments to Santander at various times. (2/2/13 Deposition of Heather Nelson ("Nelson Dep."), Docket # 116, at 35:1-2; 367-9; 47:21-23; 65:18-66:2)

Plaintiff provides Additional Proposed Findings of Fact ("PPFF") as follows:

100. In his Declaration, Nightengale avers that "HSBC's Loan Repayment and Security Agreement relating to [Nelson's] Chrysler Minivan was sold to Santander in March 2010[,]" and "HSBC's Loan Repayment and Security Agreement relating to

9

[Nelson's] Dodge Truck was sold to Santander in August 2010." (1/7/13 *Nightengale Declaration*, ¶¶ 6-8; Dkt 82)

**RESPONSE:** Santander does not dispute the facts set forth in PPFF 100.

101.    In his November 28, 2012, deposition, Nightengale could not recall or testify about which of Nelson's loans was allegedly sold by HSBC to Santander in March and which was allegedly sold in August. (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 96:1-19; 97: 22-24; 98: 1-15)

**RESPONSE:** Disputed. Nightengale testified he would have to refresh his memory, and counsel for Plaintiff refused to show Mr. Nightengale any documents to refresh his memory. (11/28/12 Deposition of Santander's Corporate Designee Wayne Nightengale ("Nightengale Dep."), Docket # 66, at 96-99.) Subsequently, with his memory refreshed, Nightengale produced his declaration which specified the loan sold by HSBC in March, and the loan sold by HSBC in August. (1/7/13 Declaration of Wayne Nightengale ("Nightengale Dec."), at ¶ 6, 8).

102.    On October 30, 2012, Nelson's counsel served a notice of corporate designee deposition on Santander. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 15; Dkt 85) Three of the topics identified in the notice included:

> All communications between Santander and any other individual or entity regarding Heather Nelson or her accounts, including the identity of the participants in the communication, the date and time of the communication and the content and substance of the communication, as well as all records of contacts with Heather Nelson and third parties concerning Heather Nelson's accounts.

(*Id.*, ¶ 16)

10

The loan transactions between Heather Nelson and HSBC or Santander or their predecessors, if any.

(*Id.*)

The process, events, terms, and circumstances under which the debts allegedly owed by Heather Nelson were referred, placed, sold, sent for servicing, or otherwise assigned and/or transferred to Santander, and the identification of all documents relevant to, related to, or reflecting such referral, servicing, placement, sale or assignment.

(*Id.*)

Santander did not seek or obtain a protective order regarding Nelson's notice of deposition. (*Id.*, ¶ 17)

**RESPONSE:**   Santander does not dispute that the notice of corporate designee was served, and the topics listed were set forth in the notice. Santander disputes it had any obligation to seek or obtain a protective order regarding the objectionable topics in Nelson's notice of deposition.

103.   On November 28, 2012, Nelson's counsel deposed Wayne Nightengale, Santander's 30(b)(6) corporate designee representative in Chicago, Illinois. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 18; Dkt 85)

**RESPONSE:**   Santander does not dispute the facts set forth in PPFF 103.

104.   Even though Santander was on notice that Nelson would be inquiring into the process, events, terms, and circumstances under which Nelson's loans were referred, placed, sold, sent for servicing or otherwise assigned to Santander, Santander's 30(b)(6) corporate designee, Wayne Nightengale, could not tell Nelson which of her two loans was

11

allegedly acquired or purchased by Santander in March of 2010, and which was allegedly acquired or purchased in August 2010, without looking at the loan servicing agreement between Santander and HSBC. (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 96:1-19; 97: 22-24; 98: 1-15)

**RESPONSE:** Disputed. Nightengale testified he would have to refresh his memory, and counsel for Plaintiff refused to show Mr. Nightengale any documents to refresh his memory. (Nightengale Dep., Docket # 66, at 96-99.) Subsequently, with his memory refreshed, Nightengale produced his declaration which specified the loan sold by HSBC in March, and the loan sold by HSBC in August. (Nightengale Dec., at ¶ 6, 8.)

105.    Nightengale then admitted that Santander did not produce the entire loan servicing agreement between Santander and HSBC to Nelson prior to the deposition. (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 96:1-19; 97: 22-24; 98: 1-15)

**RESPONSE:** Santander does not dispute the facts set forth in PPFF 105.

106.    Although copies of every document Santander produced in discovery up to the date of deposition were brought to the deposition by Nelson's counsel, Nightengale recognized that the documents needed to answer the question of which of Nelson's loans Santander claimed it purchased in March 2010 and which it claimed it purchased in August 2010 had not been provided by Santander to Nelson's counsel. (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 96:1-19; 97: 22-

12

24; 98: 1-15)

**RESPONSE:** Dispute. The testimony cited does not demonstrate that copies of every document Santander produced in discovery "were brought to the deposition by Nelson's counsel" nor that documents needed to answer the question "had not been provided by Santander to Nelson's counsel."

107.   Exhibit D to the Declaration of Wayne Nightengale is purported by Santander to be an "Asset Sale and Purchase, Assignment and Assumption Agreement" dated August 27, 2010 between Santander and HSBC Auto Receivables Corporation and HSBC Finance Corporation. (Dkt 82 at p. 3, ¶ 8, Ex. D)

**RESPONSE:** Santander does not dispute the facts set forth in PPFF 107.

108.   Exhibit E to the Declaration of Wayne Nightengale is purported by Santander to be an "Asset Purchase Agreement" dated August 27, 2010, between Santander and HSBC Auto Finance, Inc., HSBC Auto Credit, Inc., HSBC Auto Accounts Inc., HSBC Processing Services (USA) Inc., HSBC Bank USA, National Association, Timberlink Settlement Services (USA) Inc., and Certain Other Affiliates of HAF Parties Hereto. (Dkt 82 at p. 3, ¶ 8, Ex. E)

**RESPONSE:** Santander does not dispute the facts set forth in PPFF 108.

109.   Santander failed to either produce the "Asset and Purchase, Assignment and Assumption Agreement" and the "Asset Purchase Agreement" or describe by category either of the two documents in its Initial Disclosures pursuant to FRCP 26(a)(1).

13

(1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 7, Ex. A; Dkt 85)

**RESPONSE:**   Santander does not dispute the facts set forth in PPFF 109, but further states that it produced the documents at issue during the discovery stage of this litigation, five months prior to the discovery cutoff date of May 1, 2013.  (2/7/13 Affidavit of Gary S. Caplan ("Caplan Aff."), at ¶ 2.)

110.   In its July 26, 2011, Initial Disclosure, Santander only identified three broad categories of documents to support its claims and defenses: 1) "Documents relating to Plaintiff's Santander loan files"; 2) "Any correspondence between Defendants and Plaintiff"; and 3) "All documents produced by Plaintiff, or third parties in the course of this litigation."   (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 7, Ex. A; Dkt 85)

**RESPONSE:**   Santander does not dispute the facts set forth in PPFF 110 .

111.   At no point between July 26, 2011, the date of its Initial Disclosure, and December 27, 2012, the date it produced the "Asset Sale and Purchase, Assignment and Assumption Agreement," did Santander inform Nelson's counsel that it would be using that document to support its defense to Nelson's FDCPA claim. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 8; Dkt 85)

**RESPONSE:**   Santander does not dispute the facts set forth in PPFF 111, but further states that (i) it produced the documents at issue on December 27, 2012 and January 4, 2013, respectively, during the discovery stage of this litigation, five months prior to the discovery cutoff date of May 1, 2013 (Caplan Aff., at ¶ 2), and (ii) Santander denied that

14

it was a debt collector. (Am. Answer to Second Am. Comp., at ¶ 7).

112.    Likewise, at no point between July 26, 2011, the date of its Initial
Disclosure, and January 4, 2013, the date it produced the "Asset Purchase Agreement,"
did Santander inform Nelson's counsel that it would be using that document to
support its defense to Nelson's FDCPA claim. (1/15/13 *Affidavit of Mary Catherine
Fons*, ¶ 9; Dkt 85)

**RESPONSE:** Santander does not dispute the facts set forth in PPFF 112, but further
states that (i) it produced the documents at issue on December 27, 2012 and January 4,
2013, respectively, during the discovery stage of this litigation, five months prior to the
discovery cutoff date of May 1, 2013 (Caplan Aff., at ¶ 2), and (ii) Santander denied that
it was a debt collector. (Am. Answer to Second Am. Comp., at ¶ 7).

113.    Santander never supplemented or amended its Federal Rule of Civil
Procedure 26(a)(1) Initial Disclosure, and therefore never informed Nelson that it
intended on using the "Asset Sale and Purchase, Assignment and Assumption
Agreement," or "Asset Purchase Agreement," to support its claims or defenses. (1/15/13
*Affidavit of Mary Catherine Fons*, ¶ 10; Dkt 85)

**RESPONSE:** Santander does not dispute PPFF 113.

114.    On June 14, 2012, Nelson's counsel served the following interrogatory on
Santander:

    In the form of a chronology, identify and describe in detail and with

15

particularity, the process, events, and circumstances under which the debts allegedly owed by Plaintiff was referred, placed, sold or otherwise assigned to Santander for collection, identifying all documents relevant to, related to, or reflecting such referral, placement, sale or assignment.

(1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 11; Dkt 85)

On June 14, 2012, Nelson's counsel also served the following document requests on Santander:

Any and all documents in the possession or control of Santander that it claims are in any way relevant to the subject matter of the instant lawsuit.

(*Id.*)

All documents known to Santander, which are related to or contain information about the debt being collected from Plaintiff.

(*Id.*)

The purchase and/or assignment agreement between HSBC and Santander which evidences the transfer, sale or assignment of Plaintiff's account to Santander by HSBC, and/or which evidences that HSBC gave Santander the right to service Plaintiff's account or conduct collection activities related to Plaintiff's account.

(*Id.*)

All documents evidencing Santander's security interest in Plaintiff's vehicles.

(*Id.*)

All documents evidencing that Santander is the lender and servicer of Plaintiff's "Loan Agreements" as referenced in paragraph 9 of its Counterclaim.

(*Id.*)

**RESPONSE:**   Santander does not dispute PPFF 114.

115.     Santander failed to provide either the "Asset Sale and Purchase, Assignment and Assumption Agreement" or "Asset Purchase Agreement" in its original responses to Nelson's June 14, 2012, discovery requests to Santander. (1/15/13 *Affidavit*

*of Mary Catherine Fons,* ¶ 12; Dkt 85)

**RESPONSE:**   Santander does not dispute PPFF 115.

116.   Nelson's counsel also wrote and sent Santander's counsel four letters, dated July 23, 2012, August 21, 2012, October 29, 2012, and December 3, 2012, asking for documents responsive to the above-referenced document requests. (1/15/13 *Affidavit of Mary Catherine Fons,* ¶ 13; Dkt 85)

**RESPONSE:**   Santander does not dispute PPFF 113, but further states that the parties engaged in numerous "meet and confer" telephonic conferences which resulted in the production of additional documents. (Caplan Aff., at ¶ 3.)

117.   Santander failed to produce the "Asset Sale and Purchase, Assignment and Assumption Agreement" and "Asset Purchase Agreement," however. (1/15/13 *Affidavit of Mary Catherine Fons,* ¶¶ 8-9; Dkt 85)

**RESPONSE**:   Disputed.   Santander produced both the "Asset Sale and Purchase, Assignment and Assumption Agreement" and "Asset Purchase Agreement" on December 27, 2012 and January 4, 2013, respectively during the discovery stage of this litigation, five months prior to the discovery cutoff date of May 1, 2013. (Caplan Aff., at ¶ 2.)

118.   On August 21, 2012, September 18, 2012, October 23, 2012, Nelson's counsel held meet-and-confer conferences via telephone with Santander's counsel to try

17

and obtain documents responsive to the above-referenced document requests. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 14; Dkt 85)

**RESPONSE:** Santander does not dispute PPFF 118, but further states that the parties engaged in numerous "meet and confer" telephonic conferences which resulted in the production of additional documents. (Caplan Aff., at ¶ 3.)

119. Santander failed to produce the "Asset Sale and Purchase, Assignment and Assumption Agreement" and "Asset Purchase Agreement," however. (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 7-8; Dkt 85)

**RESPONSE:** Disputed. Santander produced both the "Asset Sale and Purchase, Assignment and Assumption Agreement" and "Asset Purchase Agreement" on December 27, 2012 and January 4, 2013, respectively during the discovery stage of this litigation, five months prior to the discovery cutoff date of May 1, 2013. (Caplan Aff., at ¶ 2.)

120. Even though Nelson attempted many times to obtain the documents related to Santander's claims that it had the right to service either of Nelson's loans and that it purchased the loans from HSBC, Santander continually failed to provide the "Asset Sale and Purchase, Assignment and Assumption Agreement" and "Asset Purchase Agreement." (1/15/13 *Affidavit of Mary Catherine Fons*, ¶ 7-8; Dkt 85)

**RESPONSE:** Disputed. Santander produced both the "Asset Sale and Purchase, Assignment and Assumption Agreement" and "Asset Purchase Agreement" on December 27, 2012 and January 4, 2013, respectively during the discovery stage of this

18

litigation, five months prior to the discovery cutoff date of May 1, 2013. (Caplan Aff., at

¶ 2.)

121.   In Paragraph 4 of his Declaration, Nightengale avers that:

Santander maintains computerized records of the contract documents,
payment history, and account notes for each retail installment sales
contract of which it purchased from the selling dealer and for each
vehicle in which Santander holds a security interest. In my capacity as
Senior Vice-President, I have custody and access to Santander's business
records relating to Heather Nelson ("Plaintiff"), and in particular, (i) the
Loan Repayment and Security Agreement that Plaintiff entered with
HSBC on or about February 9, 2007 for     the     Dodge     Truck,
with corresponding Santander account number 30000120223271000
("Exhibit A") and (ii) the Loan Repayment and Security Agreement that
Plaintiff entered with HSBC or on about February 4, 2007 for the
Chrysler     Minivan,     with     corresponding     account     number
300000120213451000("Exhibit   B")   (collectively,   the   "Accounts").
Entries in these account files were made on or about the dates of the
events that are recorded therein and/or on or about the dates the
documents bear. These entries are made, and such documents are created
or retained, in the ordinary course of Santander's business by customer
service representatives and collections agents who are or were regularly
employed by Santander and whose duties are to make such entries
and/or to create and/or retain such documents.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 4)

**RESPONSE:**   Santander does not dispute the facts set forth in PPFF 121.

122.   In Paragraph 6 of Nightengale's Declaration, he avers that:

In about March 2010, Santander began the purchase of HSBC's entire
auto-finance business, and its entire portfolio of existing auto-finance
loans, without regard to whether the loans were current or in default.
HSBC's auto-finance business included HSBC Auto Finance Inc., and
HSBC Auto Finance Inc.'s affiliates, including HSBC Auto Credit Inc.,
and HSBC Auto Accounts Inc. (collectively "HSBC"). A copy of the
Bill of Sale dated March 15, 2010 to Santander is attached hereto as
Exhibit C. HSBC's Loan Repayment and Security Agreement relating to

19

the Chrysler Minivan was sold to Santander in March 2010.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 6)

**RESPONSE:** Santander does not dispute the facts set forth in PPFF 122.

123. When asked whether the March 15, 2010, Bill of Sale applied to Nelson's

van or truck loan at his deposition, Nightengale stated that he did not know. (11/28/12

*Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 134: 16- 138: 20)

**RESPONSE:** Dispute. Nightengale testified that he did not know without looking at

additional material. (Nightengale Dep., Docket # 66, at 138:19-20.)

124. In Paragraph 7 of Nightengale's Declaration, he avers that:

As part of the transaction, Santander began servicing the loans in March
2010 prior to completing the purchase and owning such loans in August
2010.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 7)

**RESPONSE:** Santander does not dispute the facts set forth in PPFF 124.

125. In Paragraph 8 of Nightengale's Declaration, he avers that:

Santander's purchase of HSBC's auto-finance business was completed in
August 2010. A copy of the Santander Asset Sale and Purchase,
Assignment and Assumption Agreement dated August 27, 2010 is
attached hereto as Exhibit D. A copy of the Asset Purchase Agreement
as to certain HSBC Auto Finance Inc. affiliates dated August 27,
2010 is attached as Exhibit E. A Bill of Sale for affiliates of HSBC
Auto Finance, Inc. dated August 27, 2010 is attached as Exhibit F.
HSBC's Loan Repayment and Security Agreement relating to Plaintiff's
Dodge Truck was sold to Santander in August 2010.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 8)

**RESPONSE:**   Santander does not dispute the facts set forth in PPFF 125.

126.   In Paragraph 3 of his Declaration, Nightengale states that:

My job responsibilities include, among other tasks, being familiar with Santander's policies and procedures, and document retention practices for various customer account records and files, including customer account notes, sales contracts, and other customer records. In my position, I have access to Santander's historical records for all accounts maintained by Santander.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 3)

**RESPONSE:**  Santander does not dispute the facts set forth in PPFF 126.

127.   The Asset Sale and Purchase Assignment and Assumption Agreement states that HSBC Auto Receivables Corporation (apparently different from HSBC Auto Credit, the "HSBC" referred to in this case) is the seller and Santander is the purchaser. (1/7/13 *Declaration of Wayne Nightengale* ¶ 8, Ex. D, Bates Stamp SCUSA 3168)

**RESPONSE:** Disputed.   The Asset Sale and Purchase Assignment and Assumption Agreement, Bates Stamp SCUSA 3168, does not state the parenthetical "(apparently different from HSBC Auto Credit, the "HSBC" referred to in this case). The document states that HSBC Auto Receivables Corporation is the seller, and HSBC Finance Corporation and Santander is the purchaser.   (Nightengale Dec., at ¶ 8, Ex. D, Bates Stamp SCUSA 3168)

128.   HSBC Auto Receivables, according to the Asset Sale and Purchase Assignment and Assumption Agreement, is selling Santander "Securitization Assets."

(1/7/13 *Declaration of Wayne Nightengale* ¶ 8, Ex. D, Bates Stamp SCUSA 3168)

**RESPONSE:** Disputed. The Asset Sale and Purchase Assignment and Assumption Agreement uses a defined term for Securitization Assets set forth in Paragraph 2a of the agreement. (Nightengale Dec., ¶ 8, Ex. D, Bates Stamp SCUSA 3175)

129.   The Securitization Assets include the sale and servicing agreements set forth in Schedule A to the Asset Sale and Purchase Assignment and Assumption Agreement. (1/7/13 *Declaration of Wayne Nightengale* ¶ 8, Ex. D, Bates Stamp SCUSA 3174, 3175 and 3199)

**RESPONSE:** Disputed. The Asset Sale and Purchase Assignment and Assumption Agreement uses a defined term for Securitization Assets set forth in Paragraph 2a of the agreement. (Nightengale Dec., ¶ 8, Ex. D, Bates Stamp SCUSA 3175)

130.   Schedule A refers to various documents, including: 1) 2006-1 Sale and Servicing Agreement; 2) 2006-2 Sale and Servicing Agreement; 3) 2006 Sale and Servicing Agreement; 4) 2007-1 Sale and Servicing Agreement; 5) Series 2006-1 Series Supplement; 6) Series 2006-2 Series Supplement; 7) Series 2006-3 Series Supplement; 7) Series 2007-1 Series Supplement; 8) 2006-1 Trust Agreement; 9) 2006-2 Trust Agreement; 10) 2006-3 Trust Agreement; and 11) 2007-1 Trust Agreement. (1/7/13 *Declaration of Wayne Nightengale* ¶ 8, Ex. D, Bates 3199 and 3200)

**RESPONSE:** Santander does not dispute PPFF 130.

22

131.     The Asset Purchase Agreement identifies a Bond Administration
Agreement and four Servicing Transfer Agreements in its "List of Securitization
Transfer Documents," which are not included in Nightengale's Declaration. (1/7/13
*Declaration of Wayne Nightengale* ¶ 8, Ex. E, Bates Stamp SCUSA 3708)

**RESPONSE**: Santander does not dispute that the Asset Purchase Agreement references
a Bond Administration Agreement and four Servicing Transfer Agreements in its "List
of Securitization Transfer Documents," which are not attached to Nightengale's
Declaration, but further states that such documents have no relevance to the transactions
at issue with Plaintiff and have no impact on Mr. Nightengale's attestation that Santander
purchased HSBC's entire portfolio of automobile loans. (Nightengale Dec., at ¶ 6, 8)

132.     The Asset Purchase Agreement is between Santander and HSBC Auto
Finance, Inc., HSBC Auto Credit, Inc., HSBC Auto Accounts Inc., HSBC Processing
Services (USA) Inc., HSBC Bank USA, National Association, Timberlink Settlement
Services (USA) Inc., and Certain Other Affiliates of HAF Parties Hereto. (1/7/13
*Declaration of Wayne Nightengale* ¶ 8, Ex. E, Bates Stamp SCUSA 3655)

**RESPONSE:** Santander does not dispute the facts set forth in PPFF 132.

133.     When asked whether the August 27, 2010, Bill of Sale applied to
Nelson's van or truck loan at his deposition, Nightengale stated that he did not know.
(11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp. 138:
21- 139: 12)

**RESPONSE:** Dispute. Nightengale testified that he did not know without looking at

additional material. (Nightengale Dep., Docket # 66, 138: 19-20.)

     134.    In Paragraph 10 of Nightengale's Declaration, he avers that:

As part of the acquisition, HSBC's records, letters, and account and
contract documents contained in HSBC's electronic and/or hard files were
also transferred in whole to Santander, without change, as they were
maintained in the ordinary course of HSBC's business.    HSBC's
records related to Plaintiff's account were transferred in whole without
alteration by Santander in about March 2010, and became Santander's
business records.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 10)

    **RESPONSE:**    Santander does not dispute the facts set forth in PPFF 134.

     135.    In Paragraph 11 of Nightengale's Declaration, he avers that:

Santander does not operate as a third-party debt collector (i.e., collecting
someone else's debt or the deb "of another") for the HSBC accounts, but
purchased [Nelson's] Chrysler Minivan Account and [Nelson's] Dodge
Truck as its own obligations that Santander purchased pursuant to
Exhibits D and E above.

(Dkt 82; 1/7/13 *Declaration of Wayne Nightengale*, ¶ 11)

    **RESPONSE:**    Santander does not dispute the facts set forth in PPFF 135.

     136.    Nightengale testified that Santander bought one of the loans in March

2010. (11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale* pp.

97: 22-24; 98: 1-15) He also testified that Santander obtained servicing rights on one

of the loans in March 2010. (*Id.*)   He also testified that Santander bought the loan on

which it obtained servicing rights in August 2010. (*Id.*)

**RESPONSE:** Santander does not dispute the facts set forth in PPFF 136.

137.     Santander acquired Nelson's loans when they were in default. (*Santander Consumer USA Inc.'s, Amended Answer to Plaintiff's Second Amended Complaint*, p. 2; 11/28/12 *Deposition of Santander's Corporate Designee Wayne Nightengale,* pp. 125: 23 - 126: 2; 127: 9-11)

**RESPONSE:** Dispute. Plaintiff testified at her deposition that she was not behind in payments and that both of her loans were not in default when Santander acquired them. (Nelson Dep., Docket # 116, at 39:24-41:4)

138.     Santander claims that it purchased Nelson's van loan in March 2010, and purchased Nelson's truck loan in August 2010. (1/7/13 *Declaration of Wayne Nightengale,* ¶¶ 6-8)

**RESPONSE:**     Santander does not dispute the facts set forth in PPFF 138.

139.     Santander claims that it began servicing the HSBC loans in March 2010 prior to completing the purchase and owning such loans in August 2010. (1/7/13 *Declaration of Wayne Nightengale,* ¶¶ 6-8)

**RESPONSE:** Dispute. As to certain individual HSBC loans, such as Plaintiff's van loan, Santander owned such loans in March 2010. , As part of its overall purchase of HSBC's entire automobile finance business, as to others HSBC loans such as plaintiff's

truck loan, Santander began servicing the HSBC loans in March 2010 prior to completing the purchase and owning such loans in August 2010. (Nightengale Dec., at ¶ 7)

DATED: February 7, 2013                Respectfully submitted,

                                        **SANTANDER CONSUMER USA**,
                                        *Defendant*

                                        /s/ David Z. Smith
                                            One of Its Attorneys

Gary S. Caplan (IL ARDC No. 6198263)
David Z. Smith (IL ARDC No. 6256687)
Reed Smith LLP
10 South Wacker Drive
Chicago, Illinois 60606-7507
312.207.1000
gcaplan@reedsmith.com

26

## CERTIFICATE OF SERVICE

I, Gary S. Caplan, hereby state that on February 7, 2013, I electronically filed the foregoing **SANTANDER CONSUMER, USA, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO THE PROPOSED FINDINGS OF FACT IN SUPPORT OF SANTANDER'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S ADDITIONAL PROPOSED FINDINGS OF FACT** with the Clerk of the Court using the ECF system, which will send notification to all parties.

By:   /s/ Gary S. Caplan

Gary S. Caplan (IL ARDC No. 6198263)
REED SMITH LLP
10 South Wacker Drive
Chicago, Illinois 60606
(312) 207-1000