IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HEATHER NELSON,

                                        OPINION and ORDER

                  Plaintiff,

                                    11-cv-307-bbc

         v.

SANTANDER CONSUMER USA, INC.,
PATRICK K. WILLIS CO., INC. dba
AMERICAN RECOVERY SERVICE
and ASSETSBIZ CORP.,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Defendant Santander Consumer USA, Inc. called plaintiff Heather Nelson's cellular telephone number more than 1000 times over the course of a year in an attempt to collect a debt on two vehicles plaintiff had financed.   In May 2010 defendant Santander repossessed one of those vehicles.   (Plaintiff alleges that defendants American Recovery Service and AssetsBiz Corp. assisted Santander with the repossession.)  In response, plaintiff filed this lawsuit in which she contends that defendants' actions violated her rights under the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692-1692p), the Telephone Consumer Protection Act (47 U.S.C. § 227), the Wisconsin Consumer Act (Wis. Stat. §§ 421.101-427.105) and Wisconsin common law.  Jurisdiction is present under 28 U.S.C. §§ 1331 and 1367.

Several motions are now before the court, including motions for partial summary

judgment from both sides.  Plaintiff has filed a motion for summary judgment with respect to her claims under the Federal Telephone Consumer Protection Act and the Wisconsin Consumer Act, dkt. #67; defendant Santander has filed a motion for summary judgment with respect to plaintiff's claim under the Fair Debt Collection Practices Act.  Dkt. #71.  In addition, the parties have filed dueling motions to "strike."  Plaintiff seeks to strike portions of a declaration submitted by one of defendant Santander's witnesses, dkt. #83; defendant Santander seeks to strike new proposed findings of fact that plaintiff filed with her reply brief.  Dkt. #135.  Finally, defendant Santander has filed a motion for leave to file an amended answer to assert a new affirmative defense.  Dkt. #113.  (Because defendant Santander is the only defendant at issue in the motions filed, I will refer to it simply as "defendant" for the remainder of the opinion.)

For the reasons discussed below, I am granting in part and denying in part plaintiff's motion for partial summary judgment.  As a result, I am awarding plaintiff $571,000 in statutory damages under 47 U.S.C. § 227(b)(3)(B) and $1000 in statutory damages under Wis. Stat. § 425.304.  I am denying the remaining motions, with the exception of defendant's motion to strike.  I have not considered any of the new proposed findings of fact that plaintiff filed with her reply brief because they violate the court's summary judgment procedures and plaintiff did not seek permission to file them.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

UNDISPUTED FACTS

In 2007 plaintiff Heather Nelson obtained credit from HSBC Auto Credit, Inc. to refinance two automobile loans, one for a van and another for a truck. Plaintiff's monthly payment for the truck loan was $491.15.

Both loan agreements included the following provisions:

PAYMENTS. Payments you make on this Loan will be applied to your account in any manner that we choose that is permitted by law. We may, but are not required to, extend or defer your obligation to make payments, with or without your consent, and interest will accrue on unpaid balances of principal during any such extension or deferral. The amount of your final payment will depend on the amounts and dates of the payments you make.

\* \* \* \*

SECURITY INTEREST. You grant us a security interest in the Collateral, which consists of: (a) the Vehicle described on page one; (b) any accessories, equipment, and replacement parts installed in the Vehicle within ten days of the date of this Agreement; (c) any insurance premiums or charges for debt cancellation or gap waiver coverages, service contracts, warranties, or similar arrangements, which are returned to us; (d) the proceeds of any insurance policies, debt cancellation or gap waiver coverages, service contracts on the Vehicle, or similar arrangements; and (e) the proceeds of any insurance policies on your life or health that are financed as part of the Principal. This security interest secures payment of all amounts owed under this Agreement, your other obligations in this Agreement, and in any transfer, renewal, extension, modification, or assignment of this Agreement.

\* \* \* \*

DEFAULT. You are in default: (a) upon failure to pay any installment when due; (b) upon failure to comply with any provision of this Agreement; (c) if the Vehicle is lost, stolen, substantially damaged, destroyed, sold, encumbered, removed, concealed, attached, levied upon, confiscated, or subject to forfeiture under law; (d) upon the initiation of any proceeding in bankruptcy, receivership, or insolvency involving you or the Vehicle; (e) any statement or warranty you made in connection with this Loan is untrue or inaccurate at the time when made; or (f) you or any guarantor dies, becomes incompetent, or

3

ceases to exist. Our waiver of any default or our acceptance of any late payment does not constitute a waiver as to any other default.

REMEDIES UPON DEFAULT. Upon default, we may, at our option and without notice except as may be required by applicable law, accelerate this Loan and declare the entire unpaid amount of this Loan immediately due and payable, and exercise all or any of our rights of enforcement, including without limitation the right to peaceably repossess the Vehicle. We may also recover from you any reasonable and lawful expenses related to enforcement of our rights, including attorney fees not in excess of 15% of the amount you owe (if attorney is not our salaried employee), court costs, and any fees incurred in repossessing or selling the Vehicle. You may be subject to suit and liability, if not prohibited by law, if any amount obtained upon sale or disposition of the Vehicle is insufficient to pay the balance of the Loan and any other amounts due under this Agreement. You will pay simple interest at the lesser of the Contract Rate or the maximum legal rate of interest on the unpaid balance of any judgment in our favor.

\* \* \* \*

EXCHANGE OF INFORMATION. You understand that from time to time we may receive credit information concerning you from others, such as credit reporting agencies. If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a credit reporting agency. You agree that the Department of Motor Vehicles (or similar state agency) may release your residence address to us. You agree that our supervisory personnel may monitor or record telephone calls between you and our representatives in order to evaluate the quality of our service to you. If you are serving in the U.S. Armed Forces, you agree that we may communicate with your superior officer(s) regarding your Loan, including without limitation, the collection and timely payment of your Loan.

Beginning in March or April 2010 defendant Santander Consumer USA, Inc., an automobile finance company, began making calls to 608-512-xxxx in an attempt to collect the debt from those loans.  At some point, defendant purchased HSBC Auto Credit, including plaintiff's loans. (The parties dispute whether defendant began its efforts to collect the debt before it purchased HSBC.)

4

The number defendant called belonged to a cellular phone that plaintiff used and paid for, but only the name of plaintiff's husband appears on the monthly bill. Plaintiff had not included that cell phone number in her loan application documents. In the calls to plaintiff, defendant "demanded" that she make payments on her loan. (The parties dispute whether plaintiff had defaulted on her loans or was behind on her payments.) Some of the messages were recordings.

In making these calls, defendant used the Aspect telephony system, a computer telephone software system that routes and places inbound and outbound calls. Aspect has the capacity to (1) store telephone numbers and then call them; and (2) perform "predictive dialing" and "preview dialing."

In predictive dialing, the system times the dialing of numbers using an algorithm to predict when an agent will become available to receive the next call. To facilitate that method of dialing, defendant created lists of customer telephone numbers to be called on a particular day. In preview dialing, an employee chooses a telephone number by clicking on a computer screen and the system calls it. Defendant's employees never called plaintiff by pressing numbers on a keypad.

In a letter dated April 13, 2010, plaintiff wrote the following message to defendant: "You may not at anytime contact me at any work number listed. This includes [four telephone numbers including 608-512-xxxx]. Any conversations need to be addressed in writing." (The parties dispute whether plaintiff told defendant verbally not to call her cell phone number.) Defendant continued to call plaintiff at the same number after she sent

5

this letter.

On May 29, 2010, defendant repossessed plaintiff's truck. (The parties dispute whether defendant sent and plaintiff received a document dated April 29, 2010 called "Notice of Right to Cure" or "Notice of Right to Cure Default" regarding the truck loan.)

Between March 2010 and April 2011, defendant called 608-512-xxxx 1026 times. In addition, defendant left 116 prerecorded messages on the voicemail for this phone.


OPINION

I.  DEFENDANT SANTANDER'S MOTION FOR SUMMARY JUDGMENT

Defendant's motion for partial summary judgment focuses on plaintiff's claim under the Fair Debt Collection Practices Act and that act's distinction between "debt collectors,"15 U.S.C. § 1692a(6), which may be sued under the Act, and "creditors," 15 U.S.C. § 1692a(4), which cannot be sued.  Defendant argues that it is a creditor within the meaning of the Act because it was attempting to collect a debt for itself rather than a third party.

In response to defendant's 10-page brief, plaintiff has filed a 30-page brief in opposition along with a 19-page motion to "strike" various  pieces of evidence defendant relies on to show that it did not make any debt collection efforts until after it acquired plaintiff's loan through its purchase of HSBC.  Unfortunately, plaintiff has not heeded the repeated admonishments by the Court of Appeals for the Seventh Circuit that motions to "strike" are not the appropriate vehicle for challenging another party's submissions.  E.g., Wiesmueller v. Kosobucki, 547 F.3d 740, 741 (7th Cir. 2008); Custom Vehicles, Inc. v.

6

Forest River, Inc., 464 F.3d 725 (7th Cir. 2006); Redwood v. Dobson, 476 F.3d 462, 470-71 (7th Cir. 2007).   "If a party believes any of the averments in an affidavit are inadmissible, the proper response is not to move to strike the affidavits themselves, but to dispute each of the facts proposed by the other party that relied on those affidavits, on the ground that the proposed facts are not supported by admissible evidence."  Prochaska v. Menard, Inc., 829 F. Supp. 2d 710, 713 (W.D. Wis. 2011) (alterations omitted).  A motion to strike accomplishes nothing but to add confusion regarding what is actually in dispute. Accordingly, I am denying plaintiff's motion to strike and her accompanying request for sanctions.

In any event, I need not consider any of the disputed evidence because I agree with plaintiff's alternative argument that, even if defendant owned plaintiff's loan during the relevant time, defendant was still a "debt collector" because it obtained plaintiff's loan after plaintiff had defaulted on the loan, or at least a reasonable jury could so find.  The law in this circuit is clear:  "the purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself."  McKinney v. Cadleway Properties, Inc., 548 F.3d 496, 501 (7th Cir. 2008).  See also Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003)("[T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not").

Defendant argues that the language of the statute requires a different interpretation, but this argument is a nonstarter because accepting it would require overruling McKinney

and <u>Schlosser</u>, something I obviously cannot do.  Alternatively, defendant argues that

<u>McKinney</u> and <u>Schlosser</u> are distinguishable because "the defendants in those cases did not

acquire the entire business of another creditor.  Instead, they merely purchased loans."

Dft.'s Br., dkt. #72, at 8.  However, defendant points to no language in those cases to

suggest that the court viewed this distinction as important or even relevant.  The language

quoted above from <u>McKinney</u> leaves no room for argument: if the defendant purchased the

debt when the loan was in default, the defendant is a debt collector.

   In the parties' briefs, both sides seem to assume that plaintiff was in default at the

time defendant purchased the loans.  Interestingly, in the proposed findings of fact,

defendant cites plaintiff's deposition testimony for the proposition that the loans were *not*

in default at the time, Dft.'s Resp. to Plt.'s PFOF ¶ 137, dkt. #120, while plaintiff cites the

deposition testimony of defendant's corporate designee for the proposition that they were

in default.  Plt.'s PFOF ¶ 137, dkt. #110.  Although it is unusual for parties to dispute their

own testimony with testimony of the other party, neither side argues that it is prohibited

from doing so in the context of a motion for summary judgment with respect to plaintiff's

claim under the Fair Debt Collection Act.  Because some evidence supports the view that

plaintiff's loans were in default when defendant purchased them, I must deny defendant's

motion for partial summary judgment.  Fed. R. Civ. P. 56(a) (court should grant summary

judgment motion if "there is no genuine dispute as to any material fact").

## II.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A.  Telephone Consumer Protection Act

Plaintiff contends that defendant's calls to her cellular phone violated 47 U.S.C. § 227(b)(1)(A)(iii), which makes it "unlawful for any person . . .  to make any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call."  Defendant denies that plaintiff is entitled to summary judgment on this claim because there are genuine factual disputes regarding three issues:  (1) whether plaintiff qualifies as a "called party"; (2) whether plaintiff gave defendant consent to call her; and (3) whether defendant used an "automatic telephone dialing system."  In addition, the parties dispute plaintiff's entitlement to enhanced damages.


### 1.  "Called party"

Defendant argues that the "called party" identified in § 227 means the person listed on the phone bill and that plaintiff has not shown that she has "standing" to sue for a violation of § 227(b)(1)(A)(iii) because her husband is the only one listed on the bill for the cell phone defendant called.  Defendant's argument is imaginative but not persuasive.

To begin with, defendant has made the common mistake of confusing the issue of standing with a plaintiff's entitlement to relief.  E.g., Arreola v. Godinez, 546 F.3d 788, 794-95 (7th Cir. 2008) ("Although the two concepts unfortunately are blurred at times,

9

standing and entitlement to relief are not the same thing."). See also Bond v. United States,

131 S. Ct. 2355, 2362-63 (2011); Booker-El v. Superintendent, Indiana State Prison, 668

F.3d 896, 899-900 (7th Cir. 2012).   A plaintiff has standing if she was injured by the

defendant's conduct and her injury can be redressed by winning her lawsuit.   Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).   In this case, plaintiff says that she

received more than 1000 calls from defendant on the cell phone she used and she is seeking

damages for that alleged harassment, so there is no question that she has standing.

The real question presented by defendant is not whether plaintiff has standing, but

whether she has a right to sue for violations of § 227.  Defendant cites Soppet v. Enhanced

Recovery Co., LLC, 679 F.3d 637, 643 (7th Cir. 2012), for the proposition that the phrase

"'called party' in § 227(b)(1) means the person subscribing to the called number at the time

the call is made."  Because plaintiff was not listed on the cell phone bill, defendant argues,

she is not a subscriber and cannot sue.

Defendant's argument is a red herring because Soppet was not about the parties who

could sue for a violation of § 227; it was about the parties who had authority to give consent

to call the cell phone number at issue.   In particular, the court was asked to construe the

provision that allows calls "made with the prior express consent of the called party."   47

U.S.C. § 227(b)(1).  The defendant had received express consent from its customer to be

called at the cell phone number, but the defendant continued using automatic dialing to call

that number even after it was later reassigned to someone else who was not a customer and

had not given consent.  Soppet, 679 F.3d at 639.  The defendant argued that the phrase

10

"called party" should be construed to mean "intended recipient" so that a customer's consent remained valid even after a number was assigned to someone else, at least until consent was withdrawn. Id. at 640. The court rejected that argument, concluding that "[c]onsent to call a given number must come from its current subscriber." Id. at 641. Thus, Soppet does not limit the scope of liability; it limits a potential *defense* to liability.

Nothing in § 227(b)(1) limits the protections of the statute to the owner of the phone. Rather, that section prohibits the use of automatic dialing "to any telephone number assigned to a . . . cellular telephone service" regardless who answers or receives the call. Further, 47 U.S.C. § 227(b)(3), which creates a private right of action for violations of the statute, does not limit lawsuits to those brought by "subscribers" or "called parties," but applies to "a person or entity." See also D.G. v. Diversified Adjustment Service, Inc., 2011 WL 5506078, *2 (N.D. Ill. 2011) ("Nothing in [§ 227(b)(3)] indicates that a private right of action is limited to the 'called party.'"). Accordingly, I conclude that it is irrelevant to plaintiff's claim under § 227 whether she or her husband was listed on the phone bill.

## 2.  Consent

Defendant argues that plaintiff's motion for partial summary judgment should be denied because it is disputed whether plaintiff gave defendant consent to call her on her cell phone, but a threshold question is whether defendant may raise this issue now. The parties agree that the issue of consent is an affirmative defense that a defendant must plead and prove. Dft.'s Br., dkt. #114, at 8 ("Prior express consent is an affirmative defense to a claim

brought under the TCPA."); Plt.'s Br., dkt. #77, at 15 ("Prior express consent is an affirmative defense to be raised and proved by a defendant.").  Although the Court of Appeals for the Seventh Circuit has not addressed the issue, district courts seem to be uniform in adopting that view as well.  E.g., Swope v. Credit Management, LP, 2013 WL 607830, *2 (E.D.Mo. 2013); Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012); Connelly v. Hilton Grant Vacations Co., LLC, 2012 WL 2129364, *3 (S.D. Cal. 2012); Thrasher-Lyon v. Illinois Farmers Insurance Co., 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012); Shupe v. JPMorgan Chase Bank of Arizona, 2012 WL 1344820, *4 (D. Ariz. 2012); Lee v. Credit Management, LP, 846 F. Supp. 2d 716, 730 (S.D. Tex. 2012). The Federal Communications Commission has also stated that "the creditor should be responsible for demonstrating that the consumer provided prior express consent" because the creditor is "in the best position to have records kept in the usual course of business showing such consent."  In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, 565 ¶ 10 (Jan. 4, 2008).  I see no reason to question that view.

Although defendant did not raise a consent defense in any of the answers it has filed up until now, it filed a motion for leave to amend its answer to include that defense one month after plaintiff had filed her motion for partial summary judgment.  As a general rule, the Court of Appeals for the Seventh Circuit has upheld decisions to deny a request to amend the pleadings in response to a summary judgment motion.  E.g., EEOC v. Lee's Log Cabin, Inc., 546 F.3d 438, 443 (7th Cir. 2008); Grayson v. O'Neill, 308 F.3d 808, 817 (7th

Cir. 2002); <u>Bethany Pharmacal, Inc. v. QVC, Inc.</u>, 241 F.3d 854, 861-62 (7th Cir. 2001).

Defendant says that the late amendment is justified because it uncovered "significant evidence" relevant to a consent defense when it deposed plaintiff on February 2, 2013, Dft.'s Br., dkt. #114, at 5, and it cites various cases in which the court allowed a party to amend a pleading as a result of information learned in discovery.  <u>E.g.</u>, <u>Bower v. Jones</u>, 978 F.2d 1004, 1010 (7th Cir. 1992); <u>Mohamed v. Reinhart Boerner Van Deuren S.C.</u>, 2012 WL 1491860, *2 (E.D. Wis. 2012); <u>Schreiber Foods, Inc. v. Wang</u>, 2010 WL 545879, *3 (E.D. Wis. 2010); <u>Lopez v. City of Chicago</u>, 2002 WL 31415767, *1 (N.D. Ill. 2002). (Defendant identifies the last three cases incorrectly as having been decided in the Western District of Wisconsin.)   However, in each of those cases the motion was filed before summary judgment or the court found that the party could not have obtained the needed information earlier.  In this case, the magistrate judge found that it was defendant that caused the delay in deposing plaintiff and defendant has not appealed that order.  Dkt. #107.

Further, it is disingenuous for defendant to suggest that it uncovered "significant evidence" during the deposition or that it could not have raised the defense before. Defendant did not obtain an admission from plaintiff during her deposition that she had given defendant consent to call her cell phone number.  Rather, it is undisputed that plaintiff told defendant in writing in 2010 to stop calling her at that number.  Most of the evidence defendant cites in support of its consent defense comes from its own (ambiguous) records and its employees' testimony, which it could have uncovered for itself at anytime.  Thus,

defendant has not shown that it has good cause for waiting to assert the defense.

Undue delay is not necessarily a sufficient reason to deny a motion to raise an affirmative defense. Generally, "a delay in raising an affirmative defense only results in waiver if the other party is prejudiced as a result." Schmidt v. Eagle Waste & Recycling, Inc., 599 F.3d 626, 632 (7th Cir. 2010). In this case, the unfair prejudice to plaintiff is obvious. Because defendant did not seek to raise the defense until *after* plaintiff filed her motion for summary judgment, allowing defendant to assert it now would deprive plaintiff of her right to seek summary judgment on this issue and it would require her to engage in additional discovery that she otherwise could devote to other issues. Accordingly, I am denying defendant's motion for leave to file an amended answer, which means that I cannot consider defendant's argument that plaintiff consented to the calls.

3.  Automatic telephone dialing system

Section 227 defines the term "automatic telephone dialing system" to mean "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Defendant argues that plaintiff has not proven as a matter of law that it used "a random or sequential number generator" when it called her. Defendant relies on Griffith v. Consumer Portfolio Services, Inc., 838 F. Supp. 2d 723, 725 (N.D. Ill. 2011), for the proposition that "'random number generation' means random sequences of 10 digits, and 'sequential number generation' means (for example) (111) 111–1111, (111) 111–1112, and

14

so on" and it argues that plaintiff has not adduced evidence that any of its calls to her fall into either category.

Defendant acknowledges the Federal Communications Commission's expansive interpretation of the term "automatic telephone dialing system" expansively to include "predictive dialers," which the commission defines to mean "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers*." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14091-93 (July 3, 2003) (emphasis added).  However, defendant argues that the court should disregard the FCC's interpretation because Congress did not give the agency authority to implement § 227(a) and because the interpretation is inconsistent with the language of the statute.

This argument comes perilously close to violating Fed. R. Civ. P. 11.  The Court of Appeals for the Seventh Circuit has made it clear that "the Hobbs Act, reserves to the courts of appeals [on direct review] the power 'to enjoin, set aside, suspend (in whole or in part), or to determine the validity of' all final FCC orders."  CE Design, Ltd. v. Prism Business Media, Inc., 606 F.3d 443, 446, 449 n.5 (7th Cir. 2010) (citing  28 U.S.C. § 2342(1) and 47 U.S.C. § 402(a)).  CE Design involved a party's challenge to the FCC's interpretation of a definition in § 277(a) in the context of an agency ruling.  As in this case, the party argued that the FCC's interpretation was entitled to no deference because it was inconsistent with

15

the plain language of the statute.  The court's rejection of this argument was unambiguous: "a litigant can't avoid the Hobbs Act's jurisdictional bar simply by accusing an agency of acting outside its authority."  Id. at 449.

Defendant does not attempt to distinguish CE Design or even acknowledge the Hobbs Act.  Although defendant's silence could be a result of nothing more than sloppy research, this seems unlikely.  In Griffith, 838 F. Supp. 2d at 725-26, the very case defendant cites for its definition of § 227(a)(1), the court *rejected* that definition because of CE Design and the Hobbs Act.  Counsel for defendant are reminded that they have a duty under Rule 11 to refrain from making a legal contention unless it is "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and a duty under SCR 20:3.3 to "disclose to the [court] authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client."

Defendant asserts two alternative arguments.  First, it says that the evidence plaintiff cites to show how defendant's phone system works is not admissible.  That evidence came from the testimony of defendant's senior vice president of servicing, Wayne Nightengale, but defendant says it is not admissible because plaintiff has not shown that Nightengale is qualified to testify about that issue.  In particular, defendant says that Nightengale "is neither a representative of Aspect [the company that created the telephone system] nor is he a telephone communications expert" and plaintiff's counsel did not ask Nightengale any questions establishing foundation.  In addition, defendant attacks as hearsay the other

16

evidence plaintiff cites, a manual prepared by Aspect.

Defendant's argument about Nightengale's testimony also borders on the frivolous. First, defendant did not raise a foundation objection to any of plaintiff's proposed findings of fact that relied on Nightengale's testimony, so that objection may be waived.  Second, defendant cites no testimony from the deposition in which Nightengale denied having personal knowledge about an answer that he gave.  Third, and most important, plaintiff did not depose Nightengale in his individual capacity, but as a representative of the company under Fed. R. Civ. P. 30(b)(6).  One purpose of that rule is to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of the facts  that are clearly known to persons in the organization and thereby to it."  Fed. R. Civ. P. 30, 1970 Advisory Committee Notes.  The rule attempts to address that problem by requiring the corporation to produce a witness who can testify about designated topics.  "There is no obligation to select a person with personal knowledge of the events in question, but there is an obligation to proffer a person who can answer regarding 'information known or reasonably available to the organization.'"  8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2103 at 455 (3d ed. 2010) (quoting Fed. R. Civ. P. 30(b)(6)).

In this case, the topics in plaintiff's Rule 30(b)(6) deposition notice to defendant included "Santander's use of Aspect software or Aspect dialing system . . . in collecting debts and/or making telephone calls to debtors, alleged debtors, and third parties, and the capabilities of such software and dialing system."  Dkt. #132-1.  Because it was defendant

17

that chose Nightengale to testify about that issue, it cannot prevail on an argument that Nightengale's testimony is inadmissible for lack of foundation.  Square D Co. v. Breakers Unlimited, Inc., 2009 WL 1661582, *1-2  (S.D. Ind. 2009) ("The fact that [a witness] was designated by [the defendant] as its Rule 30(b)(6) deponent on the subject of [defendant's] knowledge of circuit breaker counterfeiting provides the foundation for this line of questioning."); Bowoto v. Chevron Corp., 2006 WL 2455740, *1 (N.D. Cal. 2006) ("The deposition of Michael Kuba is deemed to have been provided by [defendant] under Federal Rule of Civil Procedure 30(b)(6), and any objections based upon lack of foundation are overruled to the extent the questions fall within the scope of Topic 7(b).").

Defendant does not deny that if Nightengale's testimony is admitted, it establishes that  defendant called plaintiff, using "predictive dialers," as that term has been defined by the FCC.  Because defendant does not cite any evidence contradicting that testimony,  it is unnecessary to consider whether Aspect's manual is admissible as well.

Defendant's final argument regarding liability is that plaintiff has failed to show which calls it made to her through predictive dialing and which calls it made through "preview dialing," in which an employee rather than the system chooses which number to dial.  Regardless whether preview dialing falls outside the scope of § 227(a)(1) and the FCC's order, I agree with plaintiff that defendant's argument is another red herring.  Under both the statute and the order, the question is not how the defendant made a particular call, but whether the system it used had the "capacity" to make automated calls.  Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009) ("[A] system need not actually store,

18

produce, or call randomly or sequentially generated numbers, it need only have the capacity to do it."). Because it is undisputed that Nightengale's testimony establishes that capacity, I conclude that plaintiff is entitled to summary judgment on this claim.

4. <u>Damages</u>

Under 47 U.S.C. § 227(b)(3)(B), a plaintiff may "recover for actual monetary loss from . . . a violation, or . . . receive $500 in damages for each . . . violation, whichever is greater." In addition, "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." Plaintiff seeks statutory damages of $500 for each call defendant made to her cell phone and each prerecorded message. In addition, she asks the court for treble damage for knowing or willful violations.

Defendant does not dispute plaintiff's evidence that defendant called her cell phone 1026 times and left 116 prerecorded messages for her. In addition, defendant does not respond to plaintiff's argument that she can recover separately for each call and each prerecorded message, so that issue is waived. <u>Bonte v. U.S. Bank, N.A.</u>, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Accordingly, I conclude that plaintiff is entitled to $513,000 for the 1026 calls and $58,000 for the 116 prerecorded messages.

With respect to enhanced damages, plaintiff has failed to develop any argument that

she is entitled to them.  In her opening brief, she says only that defendant "willfully and knowingly" called her and left her prerecorded messages.  Dkt. # 77 at 25.  She does not explain why she believes defendant acted knowingly or willfully or even attempt to define those words.  Although she includes a short discussion of the issue in her reply brief, that was too late.  Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."). Accordingly, I am denying plaintiff's summary judgment motion with respect to her request for treble damages.  Although I think that it is unlikely that plaintiff will be able to show that she should receive more than the $571,000 that I am awarding in this decision, I decline to resolve that question now because defendant did not file a motion for summary judgment on this issue.  Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 736 (7th Cir. 2006) ("[I]f the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.")


### B.  Wisconsin Consumer Act

Plaintiff contends that defendant has violated the Wisconsin Consumer Act in numerous ways, with respect to both the terms of the loan agreements and the repossession of her truck.  I will consider each claim in turn.


20

1.  Notice of right to cure

Under Wis. Stat. § 425.206(1), a merchant must satisfy one of four requirements before "tak[ing] possession of collateral or goods subject to a consumer lease."  Defendant does not dispute plaintiff's assertions that she did not surrender her truck under § 425.206(1)(a), that defendant did not obtain a judgment under § 425.206(1)(b) and that plaintiff did not abandon her truck under § 425.206(1)(c). The only provision in dispute is § 425.206(1)(d), which requires the merchant to give the customer notice under Wis. Stat. § 425.205(1g).  Among the requirements in § 425.205(1g) is to include the information listed in Wis. Stat. § 425.104.  (Section 425.205(1g) imposes other requirements as well, but these are not the subject of plaintiff's motion.)

Although plaintiff's position is that she never received a notice, she acknowledges that defendant has produced a notice that it says it mailed to her on or around April 29, 2010 and included the following information:

The AMOUNT NOW DUE includes:

Late payment due 02/19/2010 $738.05
Late payment due 03/19/2010 $491.15
Late payment due 04/19/2010 $491.15
Late payment due
Delinquency charges $10.00
Deferral charges
Other charges (_____) $0.00

For the purpose of her motion for partial summary judgment, plaintiff assumes that defendant sent the notice, but she argues that the notice cannot save defendant because it does not comply with § 425.104(2).  (As noted above, plaintiff testified in her deposition

that she was not behind on her payments, but she does not argue that defendant's repossession was invalid on that ground.)   Section 425.104(2) requires a merchant to include particular information in the notice, such as "a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default."  Plaintiff says that defendant's alleged notice does not comply with that requirement because it contains two inaccuracies.  First, she says that "Late payment due 02/19/2010 $738.05" is inaccurate because her monthly payment was $491.15.  Second, she says that "Delinquency charges $10.00" is inaccurate because defendant charged ten dollars for each late payment, which means that the amount should have been $30.  Because I agree with plaintiff regarding the first deficiency, I need not consider the second. (In her reply brief, plaintiff identifies other alleged defects in the letter, but I cannot consider those. Narducci, 572 F.3d at 324.)

   In its response brief, defendant argues that the $738.05 listed in the notice does not represent the "monthly payment" due in February 2010 but rather the total past due amount as of that date.   Neither plaintiff nor defendant cites any evidence other than the document itself to support their respective interpretations, but plaintiff's is the more logical one in context.  If "payment due" referred to the total amount owed rather than the amount due that month, one would expect that the entries for March and April would be cumulative instead of listing just the amount due that month.  In any event, it is not necessary to determine which interpretation is correct because *either* results in a violation of § 425.104(2).

   If plaintiff's interpretation is correct, it means that defendant overstated the amount

that plaintiff owed by more than $200 and thus violated the requirement to inform plaintiff of the amount she needed to pay to cure the alleged default.  If defendant's interpretation is correct, it means that defendant violated the requirement to provide an itemization of charges by combining the past due amounts from multiple months.

Defendant raises an alternative argument, but it is not clear what it is.  As far as I can tell, defendant's view is that a violation of § 425.104(2) is not enforceable unless the notice fails to correctly identify the amount of time the customer has to cure the default. Defendant notes that the only two published cases in which courts invalidated notices under § 425.104(2) involved notices that the merchant mailed out before the customer defaulted on the loan.  Credit Acceptance Corp. v. Chao Kong, 2012 WI App 98,  344  Wis. 2d 259, 822 N.W.2d 506; Indianhead Motors v. Brooks, 2006 WI App 266, 297 Wis. 2d 821, 726 N.W.2d 352.

If this is defendant's argument, it makes little sense.  Although Indianhead and Credit Acceptance happened to be about notices sent at the wrong time, nothing in those decisions suggests that proper timing is the only enforceable requirement in Wis. Stat. § 425.104(2). The fact that there is little case law interpreting the statute is not a reason to limit the statute's scope artificially.

Defendant cites Rosendale State Bank v. Schultz, 123 Wis. 2d 195, 198, 365 N.W.2d 911, 912-13 (Ct. App. 1985), for the proposition that the purpose of § 425.104(2) is to give "a customer . . . knowledge of the default and . . .  an opportunity to tender the amount due," but defendant's reliance on this passage is misguided. If, as plaintiff argues,

the amount on the notice was higher than it should have been, defendant did *not* give plaintiff an opportunity to tender the amount that was actually due. It is true that, under defendant's interpretation, a failure to itemize the charges would be a more "technical" violation because it would not deprive plaintiff of notice of the total amount she needed to pay.  However, in <u>Rosendale</u> the court did not limit the scope of § 425.104(2) to "non-technical" violations.  In fact, the court did not apply that statute at all because it concluded that the customer in that case did not have a right to cure the default.  <u>Rosendale</u>, 123 Wis. 2d at 199.

In <u>Indianhead</u>, 2006 WI App 266 at ¶ 13, the court explicitly rejected the view that "technical" failures are not enforceable, noting that "virtually all defects in a notice could be considered 'technical,'" so if those defects were excluded from enforcement, "the specific listed requirements in § 425.104 would be rendered optional."  In the absence of a narrowing construction of the Wisconsin Consumer Act from the state courts, I see no authority for this court to pick and choose which requirements of the statute are enforceable. Accordingly, I conclude that defendant violated § 425.206(1) by failing to meet any of the requirements in that provision before taking possession of plaintiff's truck.

Under Wis. Stat. § 425.206(3), a violation of § 425.206(1) may be remedied under Wis. Stat. § 425.305.  That statute provides:

(1) In a transaction to which this section applies, the customer shall be entitled to retain the goods, services or money received pursuant to the transaction without obligation to pay any amount.

(2) In addition, the customer shall be entitled to recover any sums paid to the merchant pursuant to the transaction.

24

Plaintiff does not seek summary judgment on these damages, so they will have to be determined at trial.

2. <u>Loan agreements</u>

Plaintiff  contends that defendant may be held liable for various provisions that HSBC Auto Credit included in loan agreements in violation of different sections of the Wisconsin Consumer Act.  These include provisions regarding unilateral deferral of payments (Wis. Stat. § 422.204), security interests (Wis. Stat. § 422.417), default (Wis. Stat. § 425.103), attorney fees (Wis. Stat. § 422.411) and exchange of information (Wis. Stat. § 427.104).  In addition, plaintiff says that defendant committed an independent violation of § 422.411 when it included a request for fees in its counterclaims.

Defendant does not deny that it can be held liable for keeping these provisions in the agreements after it took over the loans from HSBC.  Instead, defendant says that it "has not enforced" any of the contractual provisions at issue.  Dft.'s Br., dkt. #126, at 28.  Defendant does not explain the relevance of this observation, but presumably it means to argue that plaintiff does not have a cause of action under the Wisconsin Consumer Act until defendant attempts to enforce one or more of the provisions.

I agree with defendant that plaintiff is not entitled to summary judgment on her claims under Wis. Stat. §§ 425.103 and 427.104, but for slightly different reasons.  Plaintiff says that defendant violated § 425.103 by defining "default" in the loan agreements in a way that is contrary to the statutory definition of that term.  However, § 425.103 does not create

25

a right for consumers to enforce when a merchant includes a particular provision in a loan agreement. Rather, it limits the circumstances in which a merchant can sue a customer for defaulting on a loan. Wis. Stat. § 425.103(1) ("Notwithstanding any term or agreement to the contrary, no cause of action with respect to the obligation of a customer in a consumer credit transaction shall accrue in favor of a creditor except by reason of a default, as defined in sub. (2)."). See also Bank One Milwaukee, N.A. v. Harris, 209 Wis. 2d 412, 413, 563 N.W.2d 543, 543 (Ct. App. 1997) (applying § 425.103 in context of merchant's replevin action). Because plaintiff does not allege that defendant attempted to sue her for default before the conditions in § 425.103 were met, she is not entitled to summary judgment on that claim.

Plaintiff's claim under Wis. Stat. § 427.104 is a bit more complicated. In arguing that defendant violated this statute, plaintiff points to the following provision in the agreements: "If you are serving in the U.S. Armed Forces, you agree that we may communicate with your superior officer(s) regarding your Loan, including without limitation, the collection and timely payment of your Loan." She says that, under § 427.104(1)(d), a debt collector may not "[i]nitiate or threaten to initiate communication with the customer's employer prior to obtaining final judgment against the customer" (except under circumstances not present in this case) and that under § 427.104(1)(j), a "debt collector may not . . .[c]laim . . . a right with knowledge or reason to know that the right does not exist." Although plaintiff does not suggest that she is a member of the military, she argues that defendant claimed a right it did not have by including a provision that allowed

26

it to contact an officer's employer, which would be prohibited under § 427.104(1)(d).

Even if I assume that plaintiff has interpreted each of these provisions correctly, she has overlooked the scope of the statute, which is limited to actions a debt collector takes "[i]n attempting to collect an alleged debt." Wis. Stat. § 427.104(1). Another provision defines "debt collection" as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer." Wis. Stat. § 427.103(2). Because plaintiff does not explain how simply entering into a loan agreement could qualify as an attempt to collect a debt under these circumstances, I am denying her summary judgment motion as to this claim as well.

With respect to the rest of the statutes plaintiff cites under the Wisconsin Consumer Act, I am persuaded that each of them is best read as creating a cause of action when a merchant includes an illegal clause in a loan agreement. Wis. Stat. § 422.204(8) and (10) (imposing limitations on unilateral deferrals in loan agreements and making violations remediable under § 425.304); Wis. Stat. § 422.411(1) and (3) (imposing restrictions on loan agreements that "provide for the payment by the customer of attorney fees" and stating that "[t]aking or arranging for the customer to sign an instrument in violation of this section is subject to [the remedies in] s. 425.304.); Wis. Stat. § 422.417 (imposing limitations on when merchant "may take a security interest" and making violations remediable under § 425.304). Because defendant has not responded to plaintiff's arguments that the loan agreements violate each of these laws, I conclude that defendant has waived that issue. Bonte, 624 F.3d at 466.

27

On the question of damages, Wis. Stat. §§ 422.204, 422.411 and 422.417 are subject to the remedies provision in Wis. Stat. § 425.304:

> A person who commits a violation to which this section applies is liable to the customer in an amount equal to the greater of:
>
> (1) Twice the amount of the finance charge in connection with the transaction, except that the liability under this subsection shall not be less than $100 nor greater than $1,000; or
>
> (2) The actual damages, including any incidental and consequential damages, sustained by the customer by reason of the violation.

Plaintiff is not claiming any actual damages, but she argues in her brief that she is entitled to $1000 under § 425.304(1) for each illegal provision because "[t]he finance charge for the van loan is $9,486.32 and the finance charge for the truck loan is $11,468.42." Dkt. #77 at 37. She cites her own Proposed Finding of Fact, dkt. #73, ¶ 31 for that proposition, but that proposed fact is about the contents of the loan agreements; it has nothing to do with the finance charges plaintiff has accumulated. However, in its response brief, defendant does not argue that its finance charges were less than $500 and it assumes that $1000 is the appropriate amount of damages under § 425.304 if plaintiff prevails on her claims, so I need not determine how plaintiff arrived at her figures.

The remaining dispute is whether plaintiff is limited to a total recovery of $1000 for all of the illegal provisions, as defendant argues, or defendant is required to pay $1000 for each illegal provision, as plaintiff argues. In support of its view, defendant cites Associates Financial Services Co. of Wisconsin v. Hornik, 114 Wis. 2d 163, 336 N.W.2d 395 (Ct. App.1983), in which the plaintiff sought statutory damages for 19 separate violations of

various provisions in Wis. Stat. § 427.104.  The remedies provision in chapter 427, Wis. Stat. § 427.105, allows a plaintiff to recover her actual damages "and the penalty provided in s. 425.304," the remedies statute at issue in this case. The court rejected the plaintiff's argument and concluded that "sec. 425.304 allows a consumer to collect one penalty assessment up to a maximum of $1,000 in addition to any actual damages in any action where the consumer establishes a violation to which sec. 425.304 is applicable." Hornik, 114 Wis. 2d at 173.

Plaintiff does not ask the court to disregard Hornik on the ground that the Wisconsin Supreme Court likely would reject its holding.  Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 637 (7th Cir. 2002) ("In the absence of prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court."). Instead, she argues that Hornik has no application outside claims brought under chapter 427.  Although Hornik may have involved chapter 427 claims, plaintiff does not identify anything peculiar about those claims that would support a distinction between those and other claims subject to § 425.304.  In any event, the statement quoted above makes it clear that the court's holding applies to "any action where the consumer establishes a violation to which sec. 425.304 is applicable." Accordingly, I will award plaintiff $1000 under § 425.304.

29

3.  Plaintiff's attorney fees

If a customer prevails on a claim brought under the Wisconsin Consumer Act, the court may award reasonable attorney fees under Wis. Stat. § 425.308.  In her opening brief, plaintiff says that she "is entitled to a ruling that she shall receive an award of costs and attorney fees for successfully prosecuting" her claims under the act.  Dkt. #77 at 34. In its response brief, defendant argues that plaintiff does not qualify as a prevailing party unless she shows both a violation of the act *and* a "significant benefit in litigation." E.g., Credit Acceptance Corp. v. Woodard, 2012 WI App 43, ¶ 15, 340 Wis. 2d 548, 555, 812 N.W.2d 525, 529.   In addition, it argues that plaintiff has not made this showing because she had no actual damages and the violations were minor.  Footville State Bank v. Harvell, 146 Wis. 2d 524, 539, 432 N.W.2d 122, 129-30 (Ct. App. 1988).

Plaintiff's argument in her reply brief is puzzling.  Although she does not dispute defendant's contention that she must prove a "significant benefit," she criticizes defendant for raising the issue, arguing that "it is too early examine or make this determination now," dkt. #129, even though it was plaintiff who triggered the issue by including a request for fees in her summary judgment motion.  She then repeats her request for fees, arguing that she is entitled to them if she prevails on any of her claims at summary judgment.  However, she does not develop any argument on the question whether she has proven a significant benefit, but simply states that she has.

Accordingly, I conclude that plaintiff has waived this issue for the purpose of summary judgment.  If plaintiff believes she is entitled to fees, she will have to renew her

request after trial.

ORDER

IT IS ORDERED that

1. Plaintiff Heather Nelson's motion to "strike," including her request for sanctions, dkt. #83, is DENIED.

2. Defendant Santander Consumer USA, Inc.'s motion to strike, dkt. #135, is GRANTED.

3. Defendant Santander's motion for leave to file an amended answer, dkt. #113, is DENIED.

4. Defendant Santander's motion for partial summary judgment, dkt. #71, is DENIED.

5. Plaintiff's motion for partial summary judgment, dkt. #67, is DENIED with respect to plaintiff's claims that defendant Santander violated Wis. Stat. §§ 425.103 and 427.104. In addition, her motion is DENIED on the issues whether (a) she is entitled to enhanced damages under 47 U.S.C. § 227(b)(3)(B); (b) she may recover separately for each violation of the Wisconsin Consumer Act that is subject to Wis. Stat. § 425.304; and (c) she is entitled to attorney fees under Wis. Stat. § 425.308.

6. Plaintiff's motion for partial summary judgment, dkt. #67, is GRANTED with respect to her claims that (a) defendant Santander violated 47 U.S.C. § 227 by calling her cell phone 1026 times and leaving her 116 prerecorded messages; (b) defendant Santander

violated Wis. Stat. § 425.206 by repossessing her truck before giving her proper notice of the right to cure the default; and (c) defendant Santander included provisions in its loan agreements with plaintiff that violated Wis. Stat. §§ 422.204, 422.411 and 422.417.

6.   Plaintiff is AWARDED $571,000 in statutory damages under 47 U.S.C. § 227(b)(3)(B) and $1000 in statutory damages under Wis. Stat. § 425.304.

Entered this 8th day of March, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge